## HARRIS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 101.

Circuit Court of Appeals, Second Circuit.

March 3, 1930.

Arthur F. Driscoll and O'Brien, Malevinsky & Driscoll, all of New York City (Holmes, Brewster & Ivins, of Washington, D. C., of counsel; Frank B. Meseke, of New York City, on the brief), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Andrew J. Sharpe, and Randolph C. Shaw, Sp. Assts. Atty. Gen. (C. M. Charest, Gen. Counsel, and Allin H. Pierce, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before L. HAND, SWAN, and MACK, Circuit Judges.

L. HAND, Circuit Judge.

This is a companion case to Cohan v. Commissioner of Internal Revenue, 39 F.(2d) 540, decided herewith; it concerns the taxes of Harris, Cohan's partner, in part during the period of the partnership, and in part thereafter. It raises only two questions, the first of which is the computation of the tax for the first six months of 1921. The only difference in the facts from Cohan's Case is that here it does not appear when Harris asked and got leave to change his fiscal year. If this was after January 1, 1921, his position is weaker than Cohan's, and in any event we need add nothing to what we have already said. We pass therefore to the other question.

On July 2, 1919, Harris, being then Cohan's partner, executed a deed poll by which he assigned to his wife "a full and undivided interest in and to the following theatrical enterprises in which I am either the full or part owner." Then followed the names of seven plays in which Harris gave his wife one fourth of his own interest which varied from thirty-seven and a half to a hundred per cent. The assignment was to be "subject to the said Alice Harris being responsible for the same proportion of any losses that may be incurred by the undersigned in the operation of said theatrical enterprises," and she accepted the deed. Cohan and Harris were then producing five of these plays, among them that in which the deed recited Harris to be the full owner. The firm divided the profits equally, and Harris on his individual books kept an account in his wife's name, crediting her on June thirtieth, 1920, with her proper proportion of his half of the profits in six of the plays—the five that were being produced in June, 1919, and one other. She had a drawing account of three hundred dollars a week which was similarly charged against her, as well as any other sums which Harris paid her directly. In his return for the calendar year 1920, Harris deducted the amounts appearing on his books to his wife's credit; this the Board refused to allow, and the question is whether its action was right.

Despite the language of the deed, Harris does not assert that he conveyed any interest in the firm assets, however the phrase, "theatrical enterprises," should be construed. Assuming that a partner may do so, when the firm is solvent (Managh v. Whitwell, 52 N. Y. 146, 11 Am. Rep. 683)—though that is at least not wholly clear (Fourth Nat. Bank v. New Orleans & Carrollton R. R., 11 Wall. 624, 20 L. Ed. 82)—it is universally agreed

that the result would be at once to disrupt the firm. Harris had no such purpose; he wanted only to give a present share to his wife of his interest in the firm profits, distributed and undistributed. But he had nothing to convey, except just that interest in the firm assets which he did not mean to affect. A partner at common law (and the same was true under the law in force in New York in July, 1919 [Laws 1909, c. 44]) is a joint owner of the firm assets; the civil law notion of the firm as an entity against which the partners individually have rights, analogous to choses in action, our law has steadily resisted, even in the interpretation of statutes like the Bankruptcy Act (11 USCA) which gave some excuse for the importation of the doctrine (Francis v. McNeal, 228 U. S. 695, 33 S. Ct. 701, 57 L. Ed. 1029, L. R. A. 1915E, 706). Even in insolvency we have resort to the contrivance of an "equity" of each partner against the share of the other to which firm creditors are "subrogated" (Menagh v. Whitwell), and some decisions do not even recognize this (Case v. Beauregard, 99 U. S. 119, 25 L. Ed. 370). A partner who attempts to convey his interest in the profits of the firm, but not in its assets, can therefore do no more than agree that, as soon as he withdraws his share, the assignee shall be at once entitled to them; his assignment has no immediate effect; he has nothing to assign, like a share of stock, a chose in action, or the reversion on a lease or life interest. A misunderstanding of this underlies the argument here made; Harris assimilates the deed to one which had a present subject-matter, assuming that he could transfer his future profits as though he had some right in them against the firm, independent of his joint ownership in the firm assets.

■ So far, therefore, as any part of the profits credited to his wife in fact remained undistributed, the deed transferred nothing whatever, and Harris was on any theory obliged to return them as part of his income, whether or not they were set apart as his on the books. That did not serve to segregate them from the firm assets; they were still jointly owned, though Revenue Act 1918, section 218, (a), 40 Stat. 1070, required their inclusion. What Harris withdrew is undoubtedly in a different class. The deed was given for a consideration, and, as soon as the profits were withdrawn from the firm assets, they became the property of the wife to the extent of her undivided interest. Barnes v. Alexander, 232 U. S. 117, 34 S. Ct. 276, 58 L. Ed. 530. All this we recognized in Mitchel v. Bowers, 15 F.(2d) 287, though our decision primarily rested upon the power reserved to the husband to end the agreement, which left the disposition of the profits always in his hands.

We went further, however, and held that, regardless of that power, the husband must return his whole share of the profits, those distributed as well as the rest, and the case at bar can only be regarded as an effort to reargue that ruling. We are still of the same opinion. Section 218 (a) did indeed continue to treat the firm income in accordance with the doctrine of the common law, in so far as it did not tax it as a whole; it allowed each partner to return only his own share, with the result that the sum of the individual taxes was less than if the firm had been taxed as an entity. It seems to us, however, that to permit a further reduction by partial assignments of so much as a partner may withdraw during the year, disregards the plan of partnership taxation, which is apparent in the section. In the first place the tax would in that case depend upon the accident of how much the partner chooses to withdraw in a given year, so offering opportunity for manipulation. In the second, the tax is imposed anyway upon the profits before distribution, and all profits must be so declared before they can be withdrawn, though in practice declaration and withdrawal may be simultaneous. To make the tax depend upon the question whether there is an interval, subjects the prescribed plan to exceptions which it would be unreasonable to import. Just what were the grounds of the decision of the Third Circuit in Commissioner of Internal Revenue v. Barnes (C. C. A.) 30 F.(2d) 289, the short opinion does not very clearly disclose. So far as we can gather it did not involve the point now under discussion. In any event until otherwise advised we adhere to our earlier decision.

Decision affirmed.