## ROSSMOORE v. ANDERSON, Collector of Internal Revenue.

District Court, S. D. New York.
July 6, 1932.

Supplemental Opinion July 27, 1932.

Zeiger & Berliner, of New York City, and Nelson T. Hartson, of Washington, D. C., for plaintiff.

George Z. Medalie, U. S. Atty., of New York City (H. G. Herman, of New York City, and F. W. Dewart, of Washington, D. C., of counsel), for defendant.

COXE, District Judge.

This is an action to recover $34,876.70, paid under protest September 22, 1927, on account of additional income taxes of $27,-882.77, assessed against the plaintiff for 1921, together with interest of $6,993.93 to the date of payment. The facts have all been stipulated, and the issue is purely one of law.

The plaintiff was one of three members of the firm of Rossmoore & Abbott, engaged in the accounting business in New York City. On November 1, 1920, the three partners signed a dissolution agreement providing that no new business should be undertaken, and for the completion and liquidation of the pending commitments. This agreement constituted the plaintiff liquidator of the business at a compensation of $12,000 for his entire services; it specified that the cash on hand, amounting to $70,732.92, including capital contributions, should forthwith be distributed, except for a $5,000 reserve for disbursements; and it further provided that upon completion of the liquidation the firm name should cease to be used.

By January 3, 1921, the sole assets of the firm, exclusive of office furniture and supplies, and of the disbursement reserve, consisted of (1) moneys receivable for services rendered by the firm prior thereto, and (2) moneys to become due for services by reason of the completion of service contracts on hand on that date.

On January 3, 1921, the plaintiff executed and delivered to his wife, Sarah Rossmoore, a written instrument by which he transferred to her, individually, one-third, and to her, as trustee for their two minor children, the remaining two-thirds of "all his right, title and interest, in and to the profits, and any and all other moneys, advantages, interests and benefits to be derived and realized from and out of the said partnership business now in liquidation, which shall be received on and after the date hereof," exclusive of the $5,000 reserve and the $12,000 to be paid the plaintiff for his services as liquidator. The trustee-ship with respect to the fund for the children was subsequently taken over by the plaintiff. The instrument of transfer contains, however, no provisions for revocation, and is by its terms absolute.

During the liquidation, Sarah Rossmoore, individually and as trustee for the two children, received in 1921 $54,259.86, representing the distributive share of the plaintiff in the firm income for that year, and she returned as income the amounts so received, and paid taxes thereon. The plaintiff in his individual return for 1921 reported the amount of his compensation as liquidator received in that year, but did not return anything representing his distributive share in the firm; it being his contention that the assignment to his wife effectively transferred to her, individually and as trustee, his entire interest in the firm in liquidation, and that the amount

distributed in 1921 was in no sense income to him. The commissioner, on the other hand, disregarded for tax purposes the transfer of January 3, 1921, and assessed to the plaintiff, as his individual income, the entire amount distributed in 1921 on account of the plaintiff's interest in the firm. It is to recover the additional tax due to the inclusion of these amounts in the plaintiff's return, together with the interest thereon, that this action has been brought.

Section 52 of the New York Partnership Law (Consol. Laws, c. 39) provides that "a partner's interest in the partnership is his share of the profits and surplus and the same is personal property." This was also true under the common law. Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 72 L. Ed. 749. It is further provided in section 53 of the New York act that "a conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership * * *; but it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled." This modified the common-law rule with respect to partnerships in general, Meinhard v. Salmon, 249 N. Y. 458, 471, 164 N. E. 545, 62 A. L. R. 1; but the "conveyance" mentioned in the statute gives no interest in the firm assets as such, and, during the continuation of the partnership, is ineffective to remove from the transferring partner his income tax burden on subsequent profits. Mitchel v. Bowers (C. C. A.) 15 F. (2d) 287; Harris v. Commissioner (C. C. A.) 39 F.(2d) 546.

Is the situation different by reason of the execution of the liquidating agreement of November 1, 1920? This agreement is referred to in the stipulation as "a dissolution agreement," and although counsel for the government appeared to contest that designation on the trial, I have no reason to doubt that the agreement actually worked a dissolution of the partnership. But even on dissolution, a partnership is deemed to continue for the purpose of winding up; and under the terms of the present agreement, the unfinished business of the partnership consisted largely of contracts upon which additional accounting services were to be performed before the amounts payable to the firm could be realized. This was necessarily so because of the extremely personal nature of the business; and the fact that it took until 1927 to complete the liquidation indicates that the "profits" in which the plaintiff had an interest were principally those to be made in the future through the personal efforts of the plaintiff and those connected with the firm rather than such as might be realized from finished business. The agreement was in the nature of an arrangement for a continuation of the business under the plaintiff's management with a limitation on his authority to undertake new work; and I do not think it had any material effect on the tax liability of the individual partners in so far as future income from partnership business was concerned.

I am satisfied also that the transfer of January 3, 1921, merely assigned future income without any actual transfer of the property from which this income was to be derived. It is, as aptly stated by Mr. Justice Holmes in Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731, a case where "the fruits are attributed to a different tree from that on which they grew." See, also, Burnet v. Leininger, 285 U. S. 136, 52 S. Ct. 345, 76 L. Ed. 665. The transfer by the plaintiff was of his interest "in and to the profits and any and all other moneys, advantages, interests and benefits to be derived and realized" * * * "which shall be received on and after the date hereof," indicating clearly that the intention was only to transfer whatever the plaintiff might be entitled to at some subsequent date from the earnings which had not then been made, and profits which could only be realized from future operations of the business.

The cases cited by the plaintiff in support of his contention are not analogous, as they concern transfers of property, together with the income resulting therefrom; whereas, in the present case the plaintiff's interest in the partnership, even in liquidation, was only his share in the profits and surplus after the accounting (New York Partnership Law, § 53, subd. 2); and the amounts distributed by the partnership in 1921 had to come through the partnership, and did not spring directly from any property transferred under the instrument of January 3, 1921.

There may be a decree for the defendant, dismissing the complaint, with costs.

### Supplemental Opinion.

I have made a re-examination of this case in the light of the supplemental memorandum submitted by the plaintiff, and still think that the conclusion reached in the previous opinion is correct. It is, of course, true that the individuals composing the partnership are liable only for the tax, but the statute provides that in the computation of the net in-

come of each partner, "his distributive share, whether distributed or not, of the net income of the partnership," shall be included. Revenue Act 1921, § 218 (42 Stat. 245). The tax is, therefore, on the partner's interest in the firm income, whether distributed or not. And in Harris v. Commissioner (C. C. A.) 39 F.(2d) 546, it was held that a partial assignment of a partner's interest in a going firm did not relieve the assigning partner from the payment of a tax on his entire distributive share of the firm income. On principle, I can see no distinction between such an assignment and the assignment of a partner's entire distributive share of the partnership income. In neither case, during the continuation of the partnership, is the partner's bare interest in future income subject to assignment so as to cut off tax liability; for it is the partner's distributive share in the firm income, whether distributed or not, which is the basis of the tax. I think, too, this is the plain import of Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731, although that case involved only personal earnings. In the present case, there was a continuation of the business of the partnership, even though the dissolution agreement limited the agency of the partners and provided that no new business should be undertaken; so that for all practical purposes, in so far as the tax was concerned, the case was no different than if the partnership had continued as a going firm. The cases of Parshall v. Commissioner, 7 B. T. A. 318, and Cray v. Commissioner, 7 B. T. A. 322, seem to hold to the contrary; but they were decided before Lucas v. Earl, supra, and are not controlling. The same is true of Commissioner v. Barnes (C. C. A.) 30 F.(2d) 289, although the effect of the ruling in that case is not entirely clear from the opinion. See Harris v. Commissioner, supra (C. C. A.) 39 F. (2d) 546, 547.

The conclusion reached in the previous opinion is therefore adhered to.