## MELLON v. HEINER.
### No. 6980.

District Court, W. D. Pennsylvania.
Feb. 17, 1936.

Smith, Shaw, McClay & Seifert, William A. Seifert, John G. Frazer, and William Wallace Booth, all of Pittsburgh, Pa., and Donald D. Shepard, of Washington, D. C., for plaintiff.

Frank J. Wideman, Asst. Atty. Gen., Andrew D. Sharpe, M. H. Eustace, and George H. Zeutzius, Sp. Assts. to Atty. Gen., E. L. Updike, Gen. Counsel, Treasury Department, of Washington, D. C., and Horatio S. Dumbauld and D. Lloyd Claycomb, Asst. U. S. Attys., both of Pittsburgh, Pa., for defendant.

GIBSON, District Judge.

The court makes the following:

Findings of Fact.

1. A. W. Mellon, hereinafter called the plaintiff, resided in the city of Pittsburgh, Allegheny county, Pa., and in the Western District thereof, when suit was filed.

2. Defendant, D. B. Heiner, since on or about the 1st day of August, 1921, to on or about the 1st day of July, 1933, and at the time this suit was instituted, was the duly appointed, qualified, and acting collector of internal revenue in and for the Twenty-Third District of Pennsylvania, and is a resident of the borough of Kittanning, in the Western District thereof.

3. Plaintiff, during the year 1920 and at all times before and since, has kept his books and records and has filed his income tax returns on the cash receipts and disbursements basis, of accounting.

4. On or before the date appointed by law, to wit, March 15, 1921, plaintiff filed with the then collector of internal revenue for the Twenty-Third District of Pennsylvania, his income tax return for the calendar year 1920, and upon the dates appointed by law, duly paid to said collector and to defendant the tax of $919,777.86 shown by said return to be due to the government of the United States as follows:

| | |
|---|---|
| March 15, 1921 | $229,944.46 |
| June 15, 1921 | 229,944.46 |
| September 15, 1921 | 220,293.77 |
| September 15, 1921 (credit on account of overpayment of 1917 tax) | 9,650.69 |
| December 15, 1921 | 229,944.48 |
| Total | $919,777.86 |

5. By letter dated February 21, 1927 the Commissioner of Internal Revenue (hereinafter called "Commissioner") notified plaintiff that his tax return for the year 1920 had been examined in connection with a report of a federal revenue agent and that as a result of such examination a deficiency in tax of $190,419.70 was disclosed. Said additional tax for the year 1920 was the result of the Commissioner adding to plaintiff's income profits alleged to have been realized in that year from the sale of whisky.

6. Thereafter, and on or about March 23, 1927, defendant notified plaintiff that the Commissioner had assessed the deficiency in tax of $190,419.70 for the year 1920, as set forth in said Commissioner's letter, and served on plaintiff notice and demand for the payment within ten days of said sum of $190,419.70 together with interest thereon of $12,082.52, and threatened to assess and collect additional interest, and make seizures if payment should not be made within the specified ten days' time.

7. On or about April 1, 1927, under written protest and for the purpose of avoiding additional interest, penalties, and seizures, plaintiff paid to defendant said sums of $190,419.70 and $12,082.52.

8. On or about December 12, 1918, plaintiff, his brother R. B. Mellon, and H. C. Frick entered into two separate written partnership agreements to trade and do business under the respective names of "A. Overholt & Company" and "West Overton Distilling Company"; each being registered under the Fictitious Names Act (54 P.S.Pa. § 21 et seq.). True and correct copies of said partnership agreements are attached to the statement of claim, made part thereof, and marked Exhibits "A" and "B," respectively.

9. The aforesaid two partnerships were dissolved by the death of Mr. Frick on December 2, 1919. No new partnership agreements were entered into by the two surviving partners, nor since then have any partnership agreements ever existed between the surviving partners or between the surviving partners and the personal representatives of the deceased partner, relative to the businesses of the former partnerships.

10. Immediately after the dissolution of the partnerships as aforesaid, the surviv-

ing partners began the liquidation of the two partnerships, and since that time, December 2, 1919, until January 31, 1921, acted in respect to the assets and businesses of the said two former partnerships as liquidating trustees. By written agreement dated January 31, 1921, the liquidating trustees appointed the Union Trust Company of Pittsburgh, liquidating agent, to carry out the liquidation of the assets and businesses of the said two former partnerships, true and correct copies of which are attached to the statement of claim, made part thereof, and marked Exhibits "C" and "D," respectively.

11. The books and records of the liquidating trustees for said former partnerships were kept on the cash receipts and disbursements basis of accounting.

12. Liquidation was finally consummated and distribution made by the said liquidating agent to the surviving partners and the estate of the deceased partner in the year 1925.

13. During the period of liquidation, from December 2, 1919, to and including the year 1925, no distilling operations had been carried on by the said liquidating trustees, or by the said liquidating agent, and all sales of assets of the former partnerships by either the said liquidating trustees or by the said liquidating agent were made under the then existing laws, both federal and state, relating to the sale and transportation of distilled spirits or intoxicating liquors.

14. On December 2, 1919, and during said period of liquidation from 1919 to 1925, there were debts and large contingent liabilities outstanding against the said former partnerships, and no distribution of assets could have been legally made by either the said liquidating trustees or the said liquidating agent until said debts and contingent liabilities had been released, paid, or satisfied.

15. Plaintiff and R. B. Mellon, while acting in the capacity of liquidating trustees, kept the assets of the said former partnerships, including cash, separately, treating the same as trust properties, and did not commingle such assets of cash with their own assets or cash.

16. The Commissioner determined and settled the federal tax liability of the estate of the deceased partner for the years 1920 and 1925 by holding that the so-called profits of A. Overholt & Co. and West Overton Distilling Company for the year 1920 did not constitute taxable income in that year but did constitute taxable income in the year 1925, the year in which final distribution in liquidation was made, and the estate of the deceased partner paid the tax on that basis.

17. The Commissioner increased plaintiff's share of the so-called net income or profits during the liquidation of A. Overholt & Co. and West Overton Distilling Company for the year 1920 from $48,350.74 and $5,960.55 as reported on the return to $281,779.95 and $52,814.28, respectively.

18. Plaintiff duly filed tax returns for the years 1921 to 1925, both inclusive, and for said years reported his share of the so-called profits or losses of the liquidating agent of the partnerships A. Overholt & Co. and West Overton Distilling Company, and paid the tax on the profits so reported, although he did not actually receive any payment from the liquidating trustees until final distribution in liquidation in the year 1925.

19. The Commissioner in examining the return for the year 1924 eliminated the profit and the loss so reported for that year with the following explanations as set forth in his letter to plaintiff dated November 14, 1928:

"Loss on the liquidation of West Overton Distilling Company has been eliminated as it is held that the liquidation was consummated in 1925."

"Profit on the liquidation of A. Overholt & Company has been eliminated as it is held that the corporation (error partnership) was liquidated in 1925."

20. The Commissioner in examining the income tax return filed by the plaintiff for the year 1925 included in income for that year the differences between the cost values of said partnerships as of December 2, 1919, and the amounts received in final liquidation including the so-called profits and losses for the years 1920 to 1924, inclusive. The amounts actually received in liquidation in the year 1925 included the so-called profits and losses of the liquidating agent for all said prior years.

21. On or about March 19, 1929, plaintiff filed with the defendant, on the form prescribed by the Commissioner for that purpose, claim for refund of said sums of $190,419.70 tax and $12,082.52 interest, on the ground that said additional tax for the

year 1920, the interest thereon, and the assessment and collection thereof were in all respects illegal and void, for the reasons hereinbefore stated.

22. The Commissioner took no action upon plaintiff's claim for refund for more than six months before suit was brought, but has denied said claim subsequent to suit.

23. The sum received from the sale of whisky certificates by A. Overholt & Co. and West Overton Distilling Company on 1920, and prior thereto during the existence of the partnerships, was less in amount than the cost of the assets of said companies to the partners, H. C. Frick, A. W. Mellon, and R. B. Mellon.

24. The Commissioner of Internal Revenue has included liquidating profits of $281,779.95 and $52,814.28 of A. Overholt & Co. and West Overton Distilling Company, respectively, in the income of the plaintiff for the year 1920, and has also included said liquidating profits in plaintiff's income for 1925. He has assessed and collected a tax on the same income in each of said years.

### Conclusions of Law.

I. No taxable gain is realized during the liquidation of a partnership dissolved by the death of a former partner, until the proceeds realized exceed the cost basis to the former partners of their partnership interests.

II. The assets of a partnership which ordinarily might be considered stock in trade of a going business become capital assets when the partnership is dissolved by the death of a partner and the partnership interests are in process of liquidation.

III. On the sale of such capital assets by such partnership in liquidation, profits may not be computed and taxed prior to final liquidation.

IV. Plaintiff is entitled to recover for the full amount of his claim, together with interest according to law.

### Discussion.

Prior to December of 1918, A. Overholt & Co. and West Overton Distilling Company, corporations, operated distilleries in this district. On December 12, 1918, R. B. Mellon, A. W. Mellon, and H. C. Frick formed two partnerships, under the same names as the corporations, for the purpose of taking over and liquidating the distilleries. The partners acted together for this purpose from January 1, 1919, to December 2, 1919, when Mr. Frick died. Thereafter A. W. and R. B. Mellon continued the liquidation of the properties.

The partnership agreements each provided: "In case of dissolution of the firm by death of one or more of the partners, the remaining member or members shall have full power and authority to appoint such person or persons (including incorporated companies) as liquidating agent, with such power and authority to wind up and liquidate the affairs of said partnership as to such surviving partner or partners shall seem advisable." On January 31, 1921, the surviving partners appointed the Union Trust Company of Pittsburgh as liquidating agent, and that company continued the liquidation in the same manner as the partners, except that no whisky was thereafter sold prior to final sale of the properties. The liquidating agent finished its task in 1925.

In March, 1921, A. W. Mellon and R. B. Mellon each filed his income tax return for 1920, and R. B. Mellon filed tax returns for A. Overholt & Co. and West Overton Distilling Company upon the form prescribed for partnership returns by the Commissioner of Internal Revenue. The partnership returns showed, in the case of each company, a gain arising from the sale of barrels, bottling, etc., and R. B. Mellon and A. W. Mellon each included one-third of such gain as part of his 1920 income. The gain through sales of whisky was not reported as income of the respective partnerships, but a memorandum showing such computed gains was attached to each return. Neither R. B. Mellon nor A. W. Mellon returned his share of such gains as a part of his income. The exclusion of these gains was based upon the theory that the taxpayers were engaged in the conversion of capital assets, and any gain therefrom was not distributive in 1920, and was not distributable, under the circumstances, until it had been made apparent that the proceeds of the liquidation exceeded the cost basis to the former partners of their partnership interests. It was held the profits could not be determined prior to completed liquidation. Also, as a reason for the exclusion, plaintiff was engaged in winding up the affairs of a dissolved partnership.

The Commissioner did not, at first, accede to the contention of the taxpayers, and held the gains upon the sale of whisky

to be profits for the year 1920, and distributive in that year. He assessed against A. W. Mellon and R. B. Mellon an additional tax, in amount equal to the principal sum which each seeks to recover in the instant suit brought by him, which was paid under protest. Later the Commissioner held that no profit was realized until final liquidation. This position was maintained in respect to the years 1921 to 1925, inclusive, and settlement was made with the estate of H. C. Frick upon that basis. He reverted to his original holding in 1932, but did not actually disallow the claim of the plaintiff for a refund of the 1920 deficiency tax until after the instant suit was brought.

The profits from liquor sales of 1920 were a part of the profits of the final liquidation in 1925, upon which the plaintiff paid income tax for the latter year, and no return has been made, nor tender of return, of either the tax for 1920 or any portion of the tax for 1925. Hence it is apparent that the plaintiff has been compelled to pay a double tax upon his share of the gain upon whisky sales in 1920. The gains or losses of 1921 to 1924 were all included as of 1925 and charged to that year.

Passing for the moment any question as to the propriety of the form of returns made by the two partnerships, it is apparent that the first question before the court is whether the gain for 1920 should be charged to that year or to 1925, as a taxpayer cannot be compelled to pay two income taxes upon the same gain.

We are of opinion that the gain from the sale of whisky in 1920 was not taxable as income in that year. Several reasons for the opinion may be cited: First, the properties held by the two partnerships, dissolved by the death of Mr. Frick, were being liquidated, and the whisky sold was a capital asset until the proceeds of the sale exceeded the cost of the interests of the partners; and it is unquestioned that the cost to the partners was greater than the proceeds of sale in 1920. See Art. 1570, Regulation 45, promulgated under Revenue Act of 1918. And, second, the plaintiff, as a surviving partner, was one of the trustees of the Frick interest with the duty of accounting upon termination of the liquidation; and this liquidation was not, and could not reasonably have been, completed in 1920. It will be remembered, in this connection, that each of the partnerships kept its books in the accrual basis of accounting. The accounting and distribution was not made until 1925, and until that year neither of the surviving partners included cash of the partnerships with his own funds. The defendant has questioned this statement, and points to the books of the partnerships which show that each partner and the estate of Mr. Frick received large sums of money in the year 1920. These, however, were charged to "Bills Receivable," and appeared as loans. The books also show that these sums were returned, some of them in the year 1920. The book entries and the repayments make it plain, we think, that the sums so received were not paid out in distribution of the gains of the partnerships.

Attention has been called to an opinion of this court in Guckenheimer & Bros. Co. v. Heiner,[1] decided May 12, 1934, which, counsel for defendant claims, is counter to the claim of plaintiff in the instant suit. The conditions of that case are not those of the instant case. The Guckenheimer Case was brought by the still existing corporation to recover taxes paid on its behalf. The liquidation carried on was the liquidation of the interests of former stockholders rather than of the company, which continued in business. The liquidations of the partnerships in the instant action were actually completed, and in 1920 were under the necessity of completion by reason of the provisions of the Uniform Partnership Act of Pennsylvania (59 P.S.Pa. § 1 et seq.).

The finding that the gains in 1920 were not distributed or distributive in that year is determinative of the fact that judgment must be entered in favor of the plaintiff. The plaintiff, however, in addition to the facts upon which the instant judgment is based, asserts that the deficiency assessment for the year 1920 was invalid for another reason. He alleges that the surviving members of the partnerships were acting in a fiduciary capacity, and as such constituted a taxable entity, and therefore, even if it were to be held that income had been earned in 1920, the assessment should have been made against the two surviving partners jointly, as trustees, and not against an individual partner, based upon

---

[1] No opinion for publication.

his undistributed share. Against this claim the defendant, in addition to a denial of the general proposition, has contended that the plaintiff would be estopped from setting up such a defense after making returns as a partnership, and has also set up an equitable defense in the nature of recoupment, alleging that if plaintiff and his partners had filed a fiduciary return of the partnerships for 1920, the ultimate individual liability would have been greater than it was under the assessment made, and that plaintiff with R. B. Mellon and the Frick estate, as transferees of all the property of the partnerships in 1925, may not now recover when it is apparent that the amount of the taxes assessed and paid by each of them was less than it would ultimately have been if· it had been assessed against the surviving partners as fiduciaries.

As to this second claim of the plaintiff, the established facts do not sustain the defense of estoppel. The return was made upon a partnership form, but all the basic facts were shown by it to the Commissioner. The mistake, if such it was, in the return and assessment was a mutual mistake of law. As to the recoupment defense, it was met by the finding that the gain of the partnership in 1920 was not distributed nor distributive. But the second· claim of the plaintiff, and the equitable defenses thereto, in the opinion of the court, raise only moot questions, as the return was properly made.

"On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." Section 30, Act of March 26, 1915 (P.L.18, 59 P.S.Pa. § 92).

"Except so far as may be necessary to ·wind up partnership affairs, or to complete transactions begun but not then finished, dissolution terminates all authority of any partner to act for the partnership." Section 33, Act of 1915, 59 P.S.Pa. § 95.

In addition to the quoted provisions of the Uniform Partnership Act of Pennsylvania, which provide for the continuance of the business of the partnership for the limited purpose stated therein, a continuance of the partnership after the death of a partner was contemplated by the partnership agreements, which gave surviving partners the right to appoint a liquidating agent. As stated, these questions are moot, in view of the finding that the gains of

1920 did not constitute income from the sale of a stock in trade, but were proceeds from the sale of capital assets which had not, in that year, equaled the amount of the cost bases to the former partners; and the further finding that such gains, in the hands of the surviving partners in trust for the estate of H. C. Frick, as well as for themselves, were not distributive in 1920.

An order will be made for the entry of judgment for the plaintiff.