HEINER, Former Collector of Internal Revenue, v. MELLON et al.

SAME v. MELLON.

Nos. 6151, 6152.

Circuit Court of Appeals, Third Circuit.

March 15, 1937.

142

Robert H. Jackson, Asst. Atty. Gen., J. Louis Monarch, M. H. Eustace, and George H. Zeutzius, Sp. Assts. to the Atty. Gen., and Charles F. Uhl, U. S. Atty., and Orris Bennett, Sp. Asst. to the U. S. Atty., both of Pittsburgh, Pa., for appellant.

John G. Frazer and William Wallace Booth, both of Pittsburgh, Pa., and Donald D. Shepard, of Washington, D. C. (Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., of counsel), for appellees.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

These are appeals from judgments of the District Court for the Western District of Pennsylvania. The cases were tried by stipulation without a jury. The facts are as follows:

In 1918 R. B. Mellon, A. W. Mellon, and H. C. Frick entered into partnership agreements to do business under the names of A. Overholt & Co. and West Overton Distilling Company for the purpose of liquidating two whisky distilling corporations of the same names. No new stock was to be manufactured or purchased, the sole purpose of the partnership being to liquidate the assets of the former concerns. In 1919 Mr. Frick died. No new partnership agreements were entered into by the two surviving partners, R. B. Mellon and A. W. Mellon. In 1921 the surviving partners appointed the Union Trust Company of Pittsburgh trustee and liquidating agent. The two partnerships were finally liquidated and distribution made to the surviving partners and to the estate of the deceased partner in 1925. In 1921 separate income tax returns were filed in the names of the partnerships on official partnership forms. R. B. Mellon signed the returns "Richard B. Mellon—Member of Partnership" setting forth as the other members of the partnership, A. W. Mellon and the estate of H. C. Frick. The Commissioner increased the net income of each of the partnerships so as to include profits realized from sales of whisky in 1920. The distributive shares of R. B. Mellon and A. W. Mellon, as members of this partnership, were similarly increased. Deficiencies in the individual income tax returns of R. B. Mellon and A. W. Mellon were assessed and collected by the Commissioner in 1927. Claims for refund were filed with the Commissioner in 1929 and were rejected by him in 1934. R. B. Mellon and A. W. Mellon thereupon brought actions at law for the recovery of the income taxes alleged to have been erroneously collected by the Commissioner.

The District Court found that the partnerships were dissolved by the death of Frick in 1919 and that the assets of the partnerships thereupon changed character from stock in trade to capital assets. It concluded that the surviving partners did not realize any taxable income from the sale of the whisky until the amount actually received from the partnerships equalled and exceeded the cost value and interests of the surviving partners in the partnerships as of the date of the death of the deceased partner. It held that R. B. Mellon and A. W. Mellon were therefore entitled to the claimed refunds.

The question is whether the profits derived from the sale of whisky in 1920 were taxable in that year. Article 1570 of Regulations 45 promulgated under the Revenue

Act of 1918 reads: "When a partner retires from a partnership, or it is dissolved, he realizes a gain or loss measured by the difference between the price received for his interest and the cost to him or (if acquired prior thereto) the fair market value as of March 1, 1913, of his interest in the partnership, including in such cost or value the amount of his share in any undistributed partnership net income earned since February 28, 1913, on which the income tax has been paid. * * *"

In Pennsylvania the death of one of the partners dissolves the partnership. Froess, Adm'x v. Froess, 284 Pa. 369, 131 A. 276. Uniform Partnership Act of March 26, 1915, P.L. 18, § 31 (4), 59 P.S. Pa. § 93 (4). The above-quoted regulation therefore became pertinent after the death of Frick in 1919. When Frick died and the partnerships were thereby dissolved, no gain was realized until such time as each surviving partner and the representative of the estate of the deceased partner, respectively, received an amount in excess of the cost to him of his partnership interests and of the undistributed net income on which the income tax had been paid. There were no means of determining whether profit or loss resulted from the sale of the assets of the dissolved partnerships until the proceeds should exceed the base, calculated in accordance with the Treasury Regulations above quoted. That had not occurred in 1920, for, whereas the Commissioner found that R. B. Mellon and A. W. Mellon received $233,429.-21 each from the sale of A. Overholt & Co. whisky and $46,853.73 each from the sale of West Overton Distilling Company whisky, it is conceded that the base for computation of the tax liability arising by reason of their respective interests in A. Overholt & Co. was $990,755.53 and $60,-505.66 in West Overton Distilling Company. Our conclusion is that the Commissioner erred in assessing the deficiencies for 1920.

We find no grounds for applying the doctrine of either legal or equitable estoppel. There was no misrepresentation, no concealment, and no reliance, all essential to an estoppel. At most there was a mutual mistake of law. The Commissioner had all the relevant facts before him. He was informed that Frick was a partner, that Frick died in 1919 and that the partnership's thereafter were in process of liquidation. The surviving partners, under a mistake of law, filed returns as a partnership rather than as liquidating trustees. The Commissioner, under a mistake of law, continued to treat the partnerships as though they had been unaffected by the death of one of the partners. The mistake of law was mutual.

It is argued that if the appellees are not liable as partners they are liable as transferees of the assets of the two companies. Inasmuch as we have concluded that there was no tax due for 1920, it seems to follow that no tax is collectible from the appellees as transferees.

We find no errors in the rulings of the District Court upon admission of evidence, nor in its findings of fact and conclusions of law. The judgments of the District Court are affirmed.