HEINER, FORMER COLLECTOR OF INTERNAL
REVENUE, v. MELLON ET AL., EXECUTORS.

Nos. 144 and 145. Argued March 8, 1938.—Decided May 16, 1938.

*Assistant Solicitor General Bell,* with whom *Solicitor General Reed, Assistant Attorney General Morris, Mr. J. Louis Monarch, Helen R. Carloss,* and *Mr. George H. Zeutzius* were on the brief, for petitioner.

*Mr. John G. Frazer,* with whom *Messrs. William Wallace Booth* and *Donald D. Shepard* were on the brief, for respondents.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

These cases, tried below in the federal court for western Pennsylvania and argued together here, arise from the same facts and present the same questions of law. Each action was brought against D. B. Heiner, as former Collector of Internal Revenue and individually, to recover an amount paid under protest by the taxpayer in 1927 upon a deficiency assessment of his 1920 income tax. The amounts taxed as additional income were the distributive shares of certain profits alleged to have been earned by each in 1920 as a partner in two firms. Due demand for a refund was made. In No. 144 the taxpayer was A. W. Mellon; in No. 145, R. B. Mellon. Both having died, the suits are by their executors. In No. 144, the District Court entered judgment for $202,502.22 with interest (14 F. Supp. 424); in No. 145 for $187,787.17 with interest. These judgments were affirmed by the Court of Appeals. 89 F. 2d 141. Certiorari was granted because

of alleged conflict as to applicable rules of law important in the administration of the revenue laws.

There is no dispute as to the relevant facts. Prior to December 12, 1918, A. W. Mellon, R. B. Mellon and H. C. Frick each owned one-third of the entire capital stock of two distilling corporations—A. Overholt & Company and West Overton Distilling Company. On that date those three individuals formed two partnerships in which each partner was to have a one-third interest. In January 1919 they caused to be transferred to the partnership called A. Overholt & Company all the assets of the corporation of that name; and to the partnership called West Overton Distilling Company, all the assets of that corporation. These assets included large whiskey inventories in bonded warehouses. Neither corporation had distilled any whiskey after 1916. Liquidation of the businesses of each had been started by the two corporations in 1918; and the partnerships had been organized for the purpose of liquidating them. The business of each partnership in 1920, had, like its business in 1919, consisted in the sale of whiskey certificates and the storage, bottling, casing and sale of the stock of whiskey. It was not until 1925 that the assets of the partnerships then remaining were sold in bulk, and the proceeds distributed among those entitled thereto.

Frick died December 2, 1919; but throughout 1920 the businesses of A. Overholt & Company and of West Overton Distilling Company were conducted, and their books were kept, in the same manner as the businesses had been conducted and books had been kept by the partnerships in 1919, and by the corporations in 1918. For 1920 the partnership returns of the two concerns disclosed facts from which it appeared that substantial gains had been made from the sale of whiskey. But the amounts were not reported as income of the partnerships; and neither A. W. Mellon nor R. B. Mellon included in their income

tax returns for 1920 any amount on account of them. The Commissioner of Internal Revenue determined that these sums were distributive profits; that the returns of taxable income of A. W. Mellon and of R. B. Mellon for the year 1920 should have included one-third of the profits in that year of each firm from the sale of whiskey; and made a deficiency assessment on A. W. Mellon of $190,-419.70 and on R. B. Mellon of $175,259.70.

The Revenue Act of 1918 [1] governs taxation of 1920 income. Section 218 (a) of the Act provides that individuals carrying on business in partnership shall be liable in their individual capacities for the income tax on profits earned therein, and that in computing the net income of each partner there shall be included his distributive share, whether distributed or not, of the net income of the partnership for the taxable year. Section 224 provides that the partnership shall file an informational return setting forth the items of its gross income, the deductions allowed and the distributive share of net income to which each partner is entitled.

The two Mellons filed their individual returns for 1920, and also the informational partnership returns for that year. While the Mellons claimed that they were not taxable on their shares of the profits from whiskey sold in 1920, they recognized that they were taxable for their shares of these other profits of the concerns earned in 1920. The partnership returns in the case of each concern showed a gain arising from storage, bottling and casing operations, sales of barrels, interest and rentals. One-third of each of these profits was entered by each of the Mellons in his individual return as his distributive share of the profits of the two partnerships.

*First.* The primary question for decision is whether the net profits made by the two partnerships in 1920 from the

---

[1] Act of February 24, 1919, c. 18, 40 Stat. 1057.

sales of whiskey were in their nature taxable income. Throughout 1920, A. Overholt & Company and the West Overton Distilling Company were engaged in business. The mere fact that the purpose of the partnerships was to liquidate the assets taken over from the corporations is not of legal significance. Profits made in the business of liquidation are taxable in the same way and to the same extent as if made in an expanding business. Nor is it of legal significance that the liquidation was not completed until 1925 and that until completion of the liquidation it would not be known whether the business venture, taken as a whole, had been profitable. The federal income tax system is based on an annual accounting.[2] Under that law the question whether taxable profits have been made is determined annually by the result of the operations of the year.

Purchasing real estate, subdividing and selling it in parcels is, in essence, a liquidating business. The claim has been repeatedly made that no income was realized until the investment was recouped; but the Board of Tax Appeals has uniformly held in accord with Article 43 of Regulations 45 (and later regulations) that the cost of the real estate must be apportioned among all the lots, and income returned upon the sales in each year, regardless of the number of lots remaining undisposed of at the close of the tax year.[3] A like rule has been applied where the

[2] *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359, 365; *Burnet* v. *Thompson Oil & Gas Co.*, 283 U. S. 301, 306; *Woolford Realty Co.* v. *Rose*, 286 U. S. 319, 326; *Brown* v. *Helvering*, 291 U. S. 193, 198–99; *Helvering* v. *Morgan's Inc.*, 293 U. S. 121, 126–127; *Guaranty Trust Co.* v. *Commissioner*, 303 U. S. 493, 497–498.

[3] J. S. Cullinan, 5 B. T. A. 996, 19 B. T. A. 930; Thomas J. Avery, 11 B. T. A. 958; Brodie C. Nalle, 19 B. T. A. 427; Frederika Skinner, 20 B. T. A. 491. See also B. S. Roberts, 7 B. T. A. 1162; Hannibal Missouri Land Co., 9 B. T. A. 1072; D. C. Clarke, 22 B. T. A. 314, 325; Biscayne Bay Islands Co., 23 B. T. A. 731; Searles Real Estate

taxpayer had purchased personal property in a block and was engaged in selling it in parcels. The claim that there was no taxable income until the capital had been returned was rejected.[4]

The fact that it might prove that when the business was fully liquidated the profits of 1920 were offset by heavy loss of later years is immaterial. Losses suffered by a taxpayer in a later year may be deducted from profits, if any, earned by him in that later year; but the tax on a year's income may not be withheld because losses may thereafter occur. If A. Overholt & Company and West Overton Distilling Company had remained corporations they would have been obliged to make each year return of the profits made therein and pay taxes annually throughout the period of liquidation although it might ultimately prove that the losses of the later years exceeded the profits of the earlier ones.[5] Likewise, if the concerns had each been owned by a single individual, the fact that his sole business was liquidating the concern would not have relieved him from paying annually taxes on the

---

Trust, 25 B. T. A. 1115. Compare *Perkins* v. *Thomas,* 86 F. 2d 954, 956 (C. C. A. 5), affirmed on other grounds, 301 U. S. 655; see also *Elmhurst Cemetery Co.* v. *Commissioner,* 300 U. S. 37.

[4] Santa Maria Gas Co., 10 B. T. A. 1412; American Industrial Corp., 20 B. T. A. 188; Bancitaly Corp., 34 B. T. A. 494. Compare Weser Bros., Inc., 12 B. T. A. 1394; C. H. Swift & Sons, Inc., 13 B. T. A. 138; Deer Island Logging Co., 14 B. T. A. 1027; O. H. Himelick, 32 B. T. A. 792.

[5] See Regulations 45, Art. 547; *Tazewell Electric Light & Power Co.* v. *Strother,* 84 F. 2d 327 (C. C. A. 4); *Northwest Utilities Securities Corp.* v. *Helvering,* 67 F. 2d 619 (C. C. A. 8); *First Nat. Bank of Greeley* v. *United States,* 86 F. 2d 938 (C. C. A. 10). Compare *Burnet* v. *Lexington Ice & Cold Storage Co.,* 62 F. 2d 906 (C. C. A. 4); *Taylor Oil & Gas Co.* v. *Commissioner,* 47 F. 2d 108 (C. C. A. 5); *Hellebush* v. *Commissioner,* 65 F. 2d 902 (C. C. A. 6); *Whitney Realty Co.* v. *Commissioner,* 80 F. 2d 429 (C. C. A. 6).

net profits. No good reason is suggested why a different rule should apply to partnerships.

. We conclude that gains from the sale of whiskey in 1920 were income of that year. The amount of the income was determinable from the partnership books. Section 212 (b) of the Revenue Act of 1918 provides that the net income shall be computed "in accordance with the method of accounting regularly employed in keeping the books of" the taxpayer, and it is not shown that the method employed clearly failed to reflect net income.

*Second.* The fact that the partnerships had been dissolved by Frick's death before 1920 does not affect the liability of the Mellons as surviving partners for income taxes on their distributive shares of the net profits made in that year. Compare *Rossmoore* v. *Anderson*, 1 F. Supp. 35 (S. D. N. Y.), affirmed, 67 F. 2d 1009 (C. C. A. 2); *Rossmoore* v. *Commissioner*, 76 F. 2d 520 (C. C. A. 2). The business of A. Overholt & Company did not terminate on Frick's death. Although dissolved, the partnerships and the business continued, since, as stated in the Pennsylvania Uniform Partnership Act: "On dissolution the partnership is not terminated, but continues until the winding up of the partnership affairs is completed." [6] Throughout the year 1920, the business of selling stock on hand and deriving income therefrom was carried on precisely as it had been theretofore, and for the same purpose. Article 424 of Regulations 45 recognizes that even in the hands of a receiver a partnership must file a return.

*Third.* The Mellons contend, and the court below held, that the partners' interests in the partnerships were capitalized upon dissolution, so that until the liquidation returned to them the cost of their interests, no taxable income was received; that Article 1570 of Regulations 45

[6] Pa. Laws 1915, No. 15, § 30, Pa. Stat. Ann. (Purdon, 1930) Tit. 59, § 92.

so provides; and that this did not take place before 1925. But, as already-pointed out, technical dissolution does not affect the liability of a partner under § 218 for taxes on his distributive share of the partnership's income; and Article 1570 does not establish any rule that dissolution capitalizes the interest of a partner in future partnership profits. The article provides:

"When a partner retires from a partnership, or it is dissolved, he realizes a gain or loss measured by the difference between the price received for his interest and the cost to him or (if acquired prior thereto) the fair market value as of March 1, 1913, of his interest in the partnership, including in such cost or value the amount of his share in any undistributed partnership net income earned since February 28, 1913, on which income tax has been paid. ..."

This article is in no way inconsistent with the taxation of a partner on his share of the income of the partnership earned in a single year after dissolution but before completion of liquidation and distribution. It deals only with the determination of a partner's gain or loss on his investment when he completely severs his connection with the partnership and its assets. The gain or loss is determined substantially like that on any other business venture of the individual, treated as a whole. On the other hand, the profits from the sale of whiskey in 1920 were current income of the partnership for that year, not different in their nature from the profits from storage, bottling, casing, and similar operations which the Mellons returned as income. Article 1570 does not deal with this situation.

*Fourth.* The Mellons contend that because the partnerships were dissolved by the death of Frick in 1919, A. W. Mellon and R. B. Mellon, being surviving partners, became by operation of law liquidating trustees; that any income earned in 1920 from operations of the dissolved partnerships was income to the Mellons only in their

fiduciary capacity as such trustees; that under § 219. of the Revenue Act of 1918 the trust estate was a separate taxable entity; that if any income tax was due, it was therefore due from the trust, and that its assessment is now barred by the statute of limitations.

We do not find it necessary to determine whether assessment of the tax on this theory is now outlawed, or whether, as the Collector urges, recovery is precluded in any event under the doctrine of Stone v. White, 301 U. S. 532; for we are of the opinion that the Mellons are not trustees within the meaning of § 219. The fact that they may be so denominated by the law of Pennsylvania is not conclusive. It is well settled that in the interpretation of the words used in a federal revenue act, local law is not controlling unless the federal statute "by express language or necessary implication, makes its own operation dependent upon state law." "The state law creates legal interests, but the federal statute determines when and how they shall be taxed." Burnet v. Harmel, 287 U. S. 103, 110.[7] We think it is clear that under the circumstances set forth, the income earned in 1920 was income of a partnership "carrying on business" within the meaning of § 218 rather than of a trust under § 219.

The obligation of the Mellons to pay, under the federal law, taxes on the profits made in 1920 from sales of

[7] See also Burk-Waggoner Oil Assn. v. Hopkins, 269 U. S. 110, 113, 114; Palmer v. Bender, 287 U. S. 551, 555–56; Thomas v. Perkins, 301 U. S. 655, 659; Biddle v. Commissioner, 302 U. S. 573, 582. Compare Chicago Board of Trade v. Johnson, 264 U. S. 1, 8–11; United States v. Robbins, 269 U. S. 315, 327–28; Corliss v. Bowers, 281 U. S. 376, 378; Tyler v. United States, 281 U. S. 497, 503. See also Hart v. Commissioner, 54 F. 2d 848, 851 (C. C. A. 1); Fidelity-Philadelphia Trust Co. v. Commissioner, 47 F. 2d 36, 38 (C. C. A. 3); Rosenberger v. McCaughn, 25 F. 2d 699 (C. C. A. 3); Eagan v. Commissioner, 43 F. 2d 881, 883 (C. C. A. 5); Fritz v. Commissioner, 76 F. 2d 460, 461–62 (C. C. A. 5).

whiskey is in no way affected by their fiduciary obligation under the law of the State to account to the Frick estate for its interest in the two partnerships being liquidated. The surviving partners continued during 1920 to conduct the business from which they earned profits. On such income the federal law required that taxes be paid. It did not require that the payments be made from the partnership assets. How the assets shall be disposed of, and what shall be done with the proceeds when realized, are matters which may be determined by the law of the State or by agreement of the partners. But however the assets are required by the law of the State to be disposed of, or the proceeds applied, the federal law requires that taxes be paid if, in disposing of them within the year the business is conducted and profits are made.

*Fifth.* The Mellons contend that under the law of Pennsylvania no distribution of profits could lawfully have been made by the surviving partners as liquidating trustees until all debts and liabilities, contingent or otherwise, had been paid or satisfied, and the partners' capital returned; and that although the business of the partnerships had been carried on after dissolution precisely as before, and the partnership accounts for the year 1920 showed large profits earned, their respective shares of them were not distributable and could not be deemed taxable income of the partners.

Section 218 (a) of the Revenue Act of 1918 provides that "There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year. . . ." If "distributive" meant "currently distributable under state law," the contentions made by the Mellons might have some force. But it does not. Article 322 of Regulations 45 (and corresponding articles of subsequent Regulations) defines "distributive" as meaning "proportionate." Compare *Earle* v. *Commis-*

*sioner,* 38 F. 2d 965, 967–68 (C. C. A. 1). And § 220 of the Revenue Act of 1918, taxing to the shareholders the income of a corporation improperly accumulating its gains and profits for the purpose of avoiding surtax, assumes that the two words are synonymous. The tax is thus imposed upon the partner's proportionate share of the net income of the partnership, and the fact that it may not be currently distributable, whether by agreement of the parties or by operation of law, is not material.[8] No claim is made that the proportionate interests of the surviving partners was improperly determined by the Commissioner.

*Sixth.* Finally, the Mellons contend that in 1928 and 1929 the Commissioner determined that no profit was realized until final liquidation of the partnerships in 1925, and that income taxes for that year have been collected on this theory and not yet refunded. The Commissioner's alleged change of position is not here important. It is not shown that refund of these taxes is now barred. Nor is it necessary for us to consider the cost to the Mellons of their interest in these partnerships, or whether the Mellons' 1925 income taxes were erroneously assessed and collected, or whether the Commissioner correctly settled the tax liability of the Frick estate. None of these questions has any bearing upon the determination of the case before us.

*Reversed.*

MR. JUSTICE CARDOZO and MR. JUSTICE REED took no part in the consideration or decision of this case.

---

[8] Compare *Earle* v. *Commissioner,* 38 F. 2d 965 (C. C. A. 1); *Hill* v. *Commissioner,* 38 F. 2d 165, 168 (C. C. A. 1); *Pope* v. *Commissioner,* 39 F. 2d 420 (C. C. A. 1); *Ruprecht* v. *Commissioner,* 39 F. 2d 458 (C. C. A. 5); *Benedict* v. *Price,* 38 F. 2d 309 (E. D. N. Y.); W. Frank Carter, 36 B. T. A. 60. See also O. D. 187, 1 C. B. 174.