# CLAUDE A. MOLLOY, SR., Appellant
## v.
# GOVERNMENT EMPLOYEES SERVICES COMMISSION, Respondent

Civ. No. 171/1994

Territorial Court Of The Virgin Islands

Division of St. Thomas And St. John

May 15, 2000

SAMUEL H. HALL, JR., ESQ., *Birch, DeJongh, Hindels & Hall*, St. Thomas, Virgin Islands, *for Petitioner*

89

Pedro K. Williams, Esq., *Law Offices Of Frazier & Williams*, St. Thomas, Virgin Islands, *for Respondent*

ALLAN D. SMITH, *Hodge & Francois*, St. Thomas, Virgin Islands, *for ·Respondent*

Swan, *Judge*

## MEMORANDUM OPINION

Before the Court is Petitioner Claude A. Molloy, Sr.'s ("Petitioner" or "Molloy") writ for review of the January 20, 1994 Decision and Order by Respondent, Government Employees Services Commission ("GESC"), dismissing Petitioner's appeal from the termination of his employment as the Administrator of the Government Employees Retirement System ("GERS").

### I. FACTS

In May of 1993, Petitioner was appointed Administrator of GERS. At the request of the GERS Board, the then Governor of the Virgin Islands, on July 29, 1993, submitted Petitioner's name to the Legislature for approval.

On September 20, 1993, the Legislature, sitting as the Committee of the Whole, confirmed Petitioner's appointment as GERS Administrator. Subsequently, on November 4, 1993 and while employed by the GERS as its Administrator, Petitioner appeared before the Legislature's Committee on Government Operations. Petitioner asserts that during this appearance before the Committee, he provided the Legislature with his analysis of the then proposed Early Retirement Bill. Petitioner believed the Office of Budget and Management opposed the bill because of the bill sponsor's reliance upon inaccurate data on the eligibility and cost associated with the proposed legislation.

Petitioner further contends that he received information concerning the value of the property connected with GERS' proposed purchase of Havensight Mall. According to Petitioner, the Thirty-Two Million Dollar ($ 32,000,000.00) purchase price for the Havensight property did not represent the fair market value of the property. Moreover, Petitioner contends that on the day he was

scheduled to receive additional information regarding the value of the property at the Havensight Mall, he was called into the GERS conference room by the GERS Board of Trustees. Once in the conference room, he was tendered a November 15, 1993 letter in which the GERS Board of Trustees terminated Petitioner from his position as Administrator of the GERS.

In his Petition for Review filed with the Court on February 11, 1994, Petitioner stated that he was terminated for several reasons, including his disclosing the aforementioned information to the Legislature, pursuant to his statutory duties as GERS Administrator. Petitioner asserted that the information he provided the Legislature led to the passage of the Early Retirement Bill. Petitioner also asserted that he was fired because of his political opinions or affiliation. Importantly, Petitioner also filed a lawsuit in the Territorial Court against the GERS, seeking injunctive relief and damages, because of his termination as Administrator of the GERS. (See, *Claude A. Molloy, Sr. v. Government Employees Retirement System*, Civil No. 137/1994). In addition, Petitioner asserted that he was terminated for inquiring whether a GERS Board member had received a mortgage loan in excess of the statutory limit on the amount of a loan from the GERS. Petitioner also contended that he was terminated for inquiring whether the GERS Board members breached their fiduciary duty to the GERS beneficiaries, by utilizing high quality securities earning income instead of available uninvested funds for the purchase of Havensight Mall. Lastly, Petitioner also asserted that he was terminated, because he inquired whether all funds utilized in the purchase of Havensight Mall were properly substantiated.

In response to his termination, Petitioner wrote a letter dated November 19, 1993, to the GESC asserting that he was wrongfully discharged from his position and simultaneously appealing his termination to the GESC.

On December 6, 1993, Petitioner filed a statement with Respondent, which is the functional equivalent of an appeal, in which he asserts that pursuant to Title 3, Sections 530 and 531 of the Virgin Islands Code, jurisdiction over his appeal appropriately lies with the GESC.

In his argument, Petitioner contended that as Administrator he was a "classified" government employee, because he did not hold

a position of a policy-determining nature. Petitioner further contended that his position as Administrator did not require a confidential relationship with a policy-making official, since the person holding the position is designated by the Governor and approved by the Legislature. Therefore, Petitioner asserted that as a regular employee he is statutorily protected against arbitrary dismissal, and he could only be dismissed "for cause", pursuant to 5 V.I.C. § 530(a).

On December 9, 1993, the GERS filed a Motion to Dismiss Petitioner's appeal. In its Motion, the GERS argued that the GESC lacked jurisdiction over the matter because, 1) the position of Administrator was placed in the "unclassified" service, pursuant to Section 3(c) of Act No. 5225 (March 24, 1988); 2) the position of Administrator is of a policy-determining nature and within the "exempt" or "unclassified" service as defined in Section 451(b) (8); 3) Petitioner is not a regular employee; therefore, he did not have to be discharged only for cause, but that he serves at the pleasure of the GERS Board.

The GERS further asserted that the Respondent lacked jurisdiction pursuant to Title 3, section 531 of the Virgin Islands Code, to hear appeals claiming discriminatory discharge asserted by "exempt" employees.

On January 27, 1994, after a hearing which afforded the parties an opportunity to be heard, Respondent entered its decision, in which it determined that it did not have jurisdiction under Title 3, Sections 530 nor section 531 of the Virgin Islands Code to entertain Petitioner's appeal.

The Respondent further held that Petitioner was not a regular employee, as contemplated by Title 3, Section 530 of the Code, and furthermore, since Molloy was an officer of the government during his employment as Administrator, he is excluded from the class of employees entitled to an appeal pursuant to 3 V.I.C. § 531.

Subsequently, Molloy filed a petition for Writ of Review of the Commission's January 27, 1994 Decision.

## ISSUES

The issues presented by Petitioner's appeal are: 1) Whether the Administrator of the Government Employees Retirement System is

a classified or regular employee and, therefore, can appeal his termination, pursuant to Title 5, Section 530 of the Virgin Islands Code, to the GESC; 2) Whether the Administrator of the Government Employees Retirement System ("GERS") has a right to appeal his termination on both a non-merit factor and on his political affiliation to GESC, pursuant to Title 3, section 531 of the Virgin Island Code; 3) Whether GESC has jurisdiction to hear Petitioner's appeal in which he claims a violation of the Whistleblowers Protection Act and 4) Whether GESC erroneously applied the relevant and applicable law to Petitioner's appeal by dismissing the matter for lack of jurisdiction.

The pivotal issue, however, is whether the Respondent has jurisdiction to hear the Petitioner's claim that he has been wrongfully terminated.

## DISCUSSION

This Court's authority to review GESC's decision is derived from 5 V.I.C. § 1421, which provides in pertinent part:

> "Any party to a proceeding before or by any officer, board, commission, authority, or tribunal may have the decision . . . reviewed for errors therein as prescribed in this chapter and rules of court . . . ."

The Court's review of an administrative determination is limited in scope; therefore, during a review of GESC's decisions, all questions of fact determined by GESC "shall be conclusive if supported by substantial evidence on the record considered as a whole." 24 V.I.C. § 380(b) (1997). *Arkansas et. al. v. Oklahoma, et. al.,* 503 U.S. 91, 113, 117 L.Ed.2d 239, 112 S.Ct. 1046 (1992); *C&K Coal Company v. Taylor,* 165 F.3d 254 (3d Cir. 1999); *Venicassa v. Consolidated Coal Co.,* 137 F.3d 197, 200 (3d Cir. 1998); *Stardyne, Inc. v. National Labor Relations Board,* 41 F.3d 141, 151 (3d Cir. 1994); *Tutu Park Limited v. Writ of Review Virgin Islands Board of Tax Review,* 38 V.I. 119 (Terr. Ct. 1998); *Government of the Virgin Islands, Department of Justice v. Public Employees Relations Board,* 26 V.I. 74, 76 (Terr. Ct. 1991).

Furthermore, the United States Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). The determination of what evidence is substantial is a matter of law to be determined by the Court upon review of the entire record. *Commissiong v. Government Employees' Retirement System*, 39 V.I. 141 (Terr. Ct. 1998); *Lewes Dairy, Inc. v. Freeman*, 401 F.2d 308 (3d Cir. 1968), cert. denied, 394 U.S. 929 (1969); and great deference is given to the agency's determination of facts by the reviewing court. *Herbert v. Government Employment Services Commission*, 1985 U.S. Dist. LEXIS 12131, 21 V.I. 358, 360 (D.C.V.I. 1985).

GESC properly asserts that the Commission is one of limited jurisdiction. As such, the Commission must first ascertain whether it has jurisdiction over a particular matter, before addressing an appeal on the same matter.

At the inception of its jurisdictional determination, the Commission must determine whether petitioner is classified as a "regular" employee, and is thereby entitled to an appeal pursuant to Title 3, Section 530 of the Virgin Islands Code.

1. The inapplicability of Title 3, Section 530 of the Virgin Islands Code.

In his appeal, Petitioner invokes Title 3, Chapter 25, Section 530 of the Virgin Islands Code which states in pertinent part that:

> "(a) . . . where a department head, including the Executive Directors of the Virgin Islands Water and Power Authority and the Virgin Islands Port Authority, decides to dismiss, demote, or suspend a *regular employee* . . . for cause, he shall furnish the employee with a written statement of the charges against him. The employee shall have ten days following the date of receipt of said statement of the charges to appeal the proposed action to the Government Employees Service Commission."

(emphasis added)

Section 530, by its unambiguous and explicit language, applies only when an employee is dismissed by "a department head" or the Executive Directors of either the Virgin Islands Water and

94

Power Authority or the Virgin Islands Port Authority. The same Title 3, chapter 25 defines a "department head" in section 451 as ". . . the commissioner at the head of any executive department of the Government." It is irrefutable and undeniable that Petitioner was never terminated by a commissioner or department head within the statutory context of section 530, nor was he terminated by either the Executive Director of the Virgin Islands Water and Power Authority or the Virgin Islands Port Authority. Rather, he was terminated by a statutory governing board which is not a commissioner. Consequently, section 530 is inapplicable to Petitioner. Nonetheless, there are other reasons to conclude that section 530 is also inapplicable to Petitioner.

Importantly, Title 3, Section 451, expressly defines "regular employees" as the class of persons protected by the statute. Further, the statute defines a regular employee as "[one] who has been appointed to a position in the classified service in accordance with this chapter after completing his working test period."

Contrastingly, and more akin to Petitioner's employment status, Title 3, Section 451a(b) provides in pertinent part that "exempt" or "unclassified" positions are:

> "(8) an officer or employee in a position of a policy determining nature, employee who is a special assistant, or who is on a special assignment to, or whose position requires a confidential relationship to a policy-making official when the position is so designated by the Governor and approved by the Legislature."

Consequently, GESC concluded, and the Court agrees, that based on the definitions of "exempt" and "unclassified" positions, the position of GERS Administrator falls within the definition of "exempt" or "unclassified positions", as enumerated in 3 V.I.C. § 451a(b) (8). Under GESC's findings Molloy, as GESC Administrator, is part of the overall group of government "employees". However, under this taxonomy, the Administrator of GERS is part of a sub-group contained within that overall group which is classified as "officers". More succinctly, all officers are employees, but all employees are not officers. Further, officers are not "regular employees" as defined by the statute.

In opposition, Molloy contends that as Administrator of GERS he occupied a "classified" position, because he did not hold a position of a policy-determining nature. However, an examination of the GERS system, in its totality, illustrates that the statutorily defined powers and duties of the GERS Administrator contradict Molloy's assertion.

Historically, as an incentive for qualified individuals to enter and continue in the service of the Government of the Virgin Islands, the Government instituted a retirement plan for the payment of retirement annuities, disability annuities, and other benefits to officials and employees of the Virgin Islands Government, as well as their dependents and beneficiaries. V.I. CODE ANN. tit. 3, § 701(b) (1995). The retirement plan is administered by the Government Employees' Retirement System, a governmental corporation created to manage annuity and disability benefits on behalf of qualified retiring employees. In addition, Title 3, Section 715(a) of the Code informs that "the responsibility for the proper operation of the [retirement] system . . . is vested in a board of trustees." In turn, the seven member appointed Board of Trustees is charged with the duty of appointing, with the consent of the Legislature, the Administrator of the Government Employees' Retirement System.

Title 3, Section 715(c) apprises the reader that the Administrator of GERS "shall be in charge of the detailed affairs of the system . . . [shall administer the business of the system and be responsible for its proper operation . . . [by] formulating rules and regulations to govern the operation of the System for presentation to the Board for its approval; [and] making recommendations to the Board . . . on any change or revisions in the provisions of this chapter. (emphasis added)

Title 3, Section 715(d) further instructs that the Administrator shall have the power and duty to:

1) Establish an office for the Government Employees Retirement System and provide for a complete and adequate system of accounts and records as may be required for the effectuation of the provisions of this chapter;

2) With the advice of a technical advisor, adopt the required actuarial tables and compile the statistical data

necessary for periodic actuarial valuations and surveys of the operation of the system;

3) Attend all meetings of the Board and carry out the resolutions and directives of the Board;

4) Certify to the Department of Finance the payments to be made according to the provisions of this chapter;

5) Remit or deposit in the name of the Government Employees Retirement System of the Government of the United States Virgin Islands all moneys received for the account of the System and render an accounting according to the law and rules and regulations in force;

6) Formulate rules and regulations to govern the operation of the System for presentation to the Board for its approval;

7) Make recommendations to the Board for the investment or reinvestment of funds of the System, and on any change or revisions in the provisions of this chapter;

8) Prepare the Annual Report on the operations of the System for presentation to the Board for its approval;

9) Issue a statement of accounts showing the amount of member's contributions to the System within 30 days of the date of a request of such member;

10) Render any reports to the Board that it may request in connection with the operations of the System;

11) Issue to each retiring member and the Virgin Islands Bureau of Internal Revenue a statement of the amount of the retiring member's retirement contributions.

The most cursory examination of the Administrator's statutory duties and responsibilities, particularly subsections 1, 3, 6, 7 and 8, makes exceedingly obvious that the Administrator is a policy maker, who has a confidential relationship with the Board, and who has tremendous influence on the decision making process of the Board. Nonetheless, because the Administrator's recommendations are subject to the approval of the Board of Trustees,

Petitioner erroneously contends that his duties as the Administrator of GERS were ministerial and not policy-making in nature.

■ Crucially, Title 3, Section 451a(8) of the Virgin Islands Code dictates that an exempt or unclassified employee is "an officer or employee in a position of a policy-determining nature . . . or whose position requires a confidential relationship to a policy-making official . . . ." Therefore, the Court concludes that the Administrator's statutory powers and duties enumerated in subsections 1, 3, 6, 7 and 8 of section 715(d) *supra.* are consistent with the definition of an exempt or unclassified employee in section 451a(b) (8) *supra.* Importantly, to determine whether an employee is in a position of a policy determining nature, one must look at particular responsibilities of the employee's job. *Zold v. Township of Mantua*, 935 F.2d 633 (3d Cir. 1991). Moreover, the Court must focus its inquiry on the overall function of the public office at issue, instead of the actual duties of the particular employee involved. *Waskovich v. Morgano*, 2 F.3d 1292 (3d Cir. 1993), *Burns v. County of Cambria, Pennsylvania*, 971 F.2d 1015 (3d Cir. 1994). However, a description of the employee's job duties offers some guidance to the Court's inquiry. *Peters v. Delaware River Port Authority of Pennsylvania and New Jersey*, 16 F.3d 1346, 1353 (3d Cir. 1994).

According to GERS' written job description, the duties of the GERS Administrator on the date of Petitioner's appointment were as follows:

1. Establish an office for the Government Employees Retirement System and provide for a complete and adequate system of accounts and records as may be required for the effectuation of the provisions of Title 3, Chapter 25, Virgin Islands Code;

2. Adopt actuarial tables and compile statistical data necessary for periodical actuarial valuations and surveys of the operations of the system;

3. Attend all Board meetings and carry out the resolutions and directives of the Board;

4. Certify to the Department of Finance the payments made according to the provisions of Title 3, Chapter 25, Virgin Islands Code;

5. Remit and deposit in the name of the Government Employees Retirement System of the Government of the Virgin Islands all moneys received for the account of the System and render an accounting according to the law and the rules and budgets;

6. Ability to prepare complete and accurate accounting reports and statements;

7. Ability to plan, organize, direct and coordinate the accounting, budgetary, fiscal, personnel and operational functions of GERS.

To reiterate, Title 3, Section 451a(b) provides, in pertinent part, that "exempt" or "unclassified" positions are:

(1) department heads . . .; [and]

(8) an officer or employee in a position of a policy-determining nature; . . . *or whose position requires a confidential relationship to a policy-making official when the position is so designated by the Governor and approved by the Legislature.* (emphasis added)

In the present case, the GERS Administrator is charged with the duty of formulating rules and regulations to govern the entire System and with making recommendations to govern the operations of the System for presentation to the Board for its approval. Moreover, the GERS Administrator is required to attend all meetings of the Board of Directors and prepare an annual report on the overall operations of the System, for the Board's approval. Therefore, the unavoidable and compelling conclusion is that Petitioner, as GERS Administrator and the head of GERS, was not only a policy maker formulating rules and regulations to govern the entire system, but was in a confidential relationship with the GERS Board of Directors.

In addition, Title 3, Section 715 of the Code instructs that the GERS Board of Trustees shall;

99

"(b) for making effective the provisions of [the code], the Board shall adopt rules and regulations . . . and shall approve and cause to be promulgated . . . *such other regulations as the Administrator may require for the proper and efficient administration of the System secondary to law.*"

(emphasis added)

Therefore, under the above statutory scheme, in order for the Board to adopt rules and regulations for the proper and efficient administration of the System and to know what the GERS needs to operate properly, effectively and efficiently, the Board has to maintain direct and confidential communication with the GERS Administrator who supervises and directs the daily operations of the GERS. Additionally, the Administrator of GERS is responsible for recommending to the Board the rules and regulations needed for the system to function efficiently. Pursuant to his recommendations, the Board then formulates and promulgates the necessary rules and regulations by which the GERS operates. Indisputably, the act of recommending policies, rules, and statutory amendments necessarily requires that the Administrator be in a confidential relationship with the policy making Board of Trustees. *See Brown v. Trench*, 787 F.2d 167 (3d Cir. 1986). Therefore, Petitioner's contention that his position as GERS Administrator did not require a confidential relationship with a policy-making official, or entity, is patently fallacious.

Consequently, the Court finds that Petitioner, as the Administrator of GERS, had "meaningful input into decision making concerning the nature and scope of [this] major governmental program." Peters *supra* 1352. Therefore, pursuant to Title 3, Section 451a(b), the Administrator of GERS is an exempt position. As such, the GESC properly concluded that the Administrator of GERS is not a "regular employee" as contemplated in Title 3, Section 530 of the Virgin Islands Code, but an "exempt employee" and an officer of the government, thereby rendering section 530 of Title 3 inapplicable in this case.

Significantly, according to Title 3, Section 715(a) of the Virgin Islands Code, the GERS is established "as an independent and separate agency of the Government of the United States Virgin Islands." However, two independent governmental instrumental-

100

ities, the Virgin Islands Water and Power Authority, 30 V.I.C. § 103, and the Virgin Islands Port Authority, 29 V.I.C. § 541, were not initially covered under 3 V.I.C. § 530. It would take legislation for both agencies to be covered. No such legislation adding GERS under section 530 was ever enacted. Therefore, it may very well be that the employees of the GERS were never contemplated to be covered by section 530. All three agencies have independence, are governed by a governing board whose members are appointed by the Governor with Legislative confirmation, and all have an executive director or administrator of comparable status at the helm of the agency. Yet, unlike the Virgin Islands Port Authority and the Virgin Islands Water and Power Authority, the GERS is conspicuously absent in section 530.

Lastly, by way of analogy, government employees in the Executive Branch of Government, with the same job title of "Administrator" are in the unclassified service. The above suggests that the Legislature intends for Administrators to be in the unclassified service. Pursuant to section 3(c), Act. no. 5225 (May 24, 1988), administrators' positions were expressly consigned to the exempt service, by the following unambiguous language; to wit:

> "Section 3. (a) Notwithstanding any other law, the Virgin Islands Executive Budget Position Supplement for Fiscal Year 1987 as incorporated into Act 5211, section 3 . . . is placing in the 'Unclassified Service' each position listed hereafter:
>
> (5) *all administrators and assistant administrators;*

(emphasis added)

■ Accordingly, the Court concludes that GESC had no jurisdiction to hearing Petitioner's appeal pursuant to Title 3, section 530 of the Virgin Islands Code and, therefore, affirms GESC's decision on this issue.

2. A GERS Administrator is excluded from the class of employees entitled to an appeal under 3 V.I.C. § 531.

Commonsensically, Section 531 serves as a natural progression from Section 530. In 1962, the Legislature changed the former

101

Section 531 to Section 530.[1] Subsequently, on March 14, 1973, Section 530 was amended to its present version.[2] Previously, all terminated employees were included within Section 530. However, in its present form, only "regular employees" are afforded protection under Section 530, which led to the development of Section 531. Title 3, Section 531 provides that:

> b) *any applicant or employee* who has reason to believe that he has been discriminated against because of religious or political opinions or affiliations or race or national origin in any personnel action may appeal to the Commission.

(emphasis added)

Thus, all other employees and applicants who believe that they have been discriminated against on the basis of race, religion, or other non-merit factor, may invoke the protection of Title 3, Section 531. Title 3, Section 531 vests in the Commission "jurisdiction to hear disputes over [matters of] classification, discharge, suspension, or the application of non-merit factors in promotion or hiring." *Bryan v. Christian*, 550 F.2d 890, 895 (3d Cir. 1977); *Upson v. Quetel*, 1984 U.S. Dist. LEXIS 16550, 20 V.I. 576 (D.C.V.I. 1984). However, the United States Third Circuit Court of Appeals has stated that the statute also addresses the use of non-merit factors in promotion or hiring. In *Bryan*, at 894-895, the Appellate Court States: "The G.E.S.C. is a statutory commission within the office of the Governor. (3 V.I.C. § 451) It has both investigatory and advisory jurisdiction, (3 V.I.C. § 472) and the power to conduct hearings authorized by Chapter 25. (3 V.I.C. § 473). Among those authorized are appeals by employees affected by the classification or allocation of a position, (3 V.I.C. § 496(a) (b)) appeals in cases or proposed dismissal or suspension, (3 V.I.C. § 530) and appeals charging discrimination on account of non-merit factors. 3 V.I.C. § 531 (a) and (b)). *While the language of sections authorizing hearings is not free from ambiguity, it would appear that the overall Legislative intention was to vest in the G.E.S.C. jurisdiction to hear disputes over classification,*

---

[1] Act. No. 819, § 6. Approved February 27, 1962, became effective March 1, 1962. *See, Donastorg v. Government Employees' Service Commission*, 285 F. Supp. 111 (D.C.V.I. 1968).

[2] Passage of Acts. No. 3429 and 3501 by the Tenth Legislature, became law on March 14, 1973.

*discharge or suspension, or application of non-merit factors in promotion or hiring. The latter jurisdiction is found in section 531.* (underline supplied) The above decision was followed by the District Court in *Upson,* supra.

Significantly, Petitioner's appeal does not involve a promotion or hiring based upon non-merit factors; therefore, under the facts and circumstances of this case, section 531 is unavailing to Petitioner in any appeal he makes based upon a classification, suspension or other non-merit factor in promotion and hiring and in anything not specifically included in section 531.

*3. G.E.S.C. lacks jurisdiction over Petitioner's Whistleblower Claim.*

In section 3 on page 2 of Petitioner's November 19, 1993 appeal Letter to the GESC, Petitioner states in pertinent part:

> ". . . my client has reason to believe that his termination was in violation of his right of free speech and his obligation to respond truthfully and accurately, and not dissemble, lie to or deceive members of the Virgin Islands Legislature when they request information from him in his capacity as Administrator of the Retirement System."

The Whistleblowers Protection Act states in section 122, in pertinent part that:

> "An employer shall not discharge . . . an employee . . . because an employee is requested by that public body to participate in an investigation, hearing, or inquiry held by that public body."

Since the issue was raised concerning Petitioner's appearance before the Virgin Islands Legislature, the Court will address the issue as to whether the GESC has jurisdiction to hear Petitioner's claim of retaliation against him because of his testimony before the Legislature. The matter would fall under the Whistleblowers Act which is encoded in Title 10, section 121 of the Virgin Islands Code.

■ While great deference is given to an administrative agency's construction of a statute, the construction must be reasonable and cannot offend existing legal principles. *Cps Chemical Company, Inc., v. National Labor Relations Board,* 160 F.3d 150 (3d Cir. 1998); *Chevron*

*U.S.A., Inc., v. National Resources Defense Council, et al.* 467 U.S. 837, 844 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). However, GESC has no jurisdiction over matters of professional treatment based upon the Whistleblowers Protection Act. Title 3, Section 472, the GESC enabling statute, is a specific statute which vests the GESC with jurisdiction over matters contained in chapter 25 of Title 3. The Whistleblowers Protection Act, a specific statute invoked by Petitioner, is found in Title 10, Section 122 of the Virgin Islands Code. Therefore, GESC lacks jurisdiction over matters governed by the Whistleblowers Protection Act. Additionally, the Court concludes that the contention that the Legislature never intended to vest the GESC with jurisdiction over Whistleblowing matters is buttressed by the fact that the GESC was in existence at the time the Whistleblowers Protection Act was promulgated. Specifically, because the Whistleblowers Protection Act was promulgated after the GESC was in existence, the Legislature had actual and constructive notice of GESC's jurisdiction when it enacted the Whistleblowers Protection Act.[3] Therefore, even though afforded the opportunity, the Legislature eschewed and failed to afford a whistleblower complainant a remedy before the GESC, which could have been accomplished by a simple amendment to Title 3, Chapter 25 of the Virgin Islands Code to reflect such an intent. Rather, the Legislature elected to establish a new right with a specific remedy for violations of the Whistleblowers Protection Act, by providing for lawsuits to be filed by complainants in the Territorial Court. Essentially, the remedy of filing a lawsuit in the Territorial Court is not in the alternative to the right of an appeal before the GESC, nor is the remedy an election of remedies between an appeal to the GESC and a lawsuit to be filed in the Territorial Court.

Importantly, when construing two statutes, such as the Whistleblowers Protection Act and the GESC enabling statute, it is well settled that the specific statute takes precedence over the general statute. *See John Doe v. National Board of Medical Examiners*, 199 F.3d 146 (3d Cir. 1999); *Morales v. Trans World Airlines, Inc.*, 504

---

[3] The G.E.S.C. has jurisdiction over matters pertaining to classification, discharge, suspension, or the application of non-merit factors in promotion or hiring. V.I. CODE ANN. tit. 3, § 530(a) (1995).

U.S. 374, 384, 119 L.Ed.2d 157, 112 S.Ct. 2031 (1992); *Government v. 0.459 Acres of Land*, V.I. LEXIS 8 (Terr. Ct. 1999); *In Re: Coastal Group, Inc. v. Manufactures Hanover Trust Company*, 13 F.3d 81 (3d Cir. 1994); *National Labor Relations Board v. A-Plus Roofing, Inc.*, 39 F.3d 1410 (9th Cir. 1994); *United States v. Louwsma*, 970 F.2d 797 (11th Cir. 1992), cert. denied, *507 U.S. 959, 113 S.Ct. 1383, 122 L.Ed.2d 759 (1993)*. Moreover, the specific statute will take precedence regardless of temporal sequence of the statutes. *Abramson v. Georgetown Consulting Group*, 765 F.Supp 255 (D.C.V.I. 1991).

Consequently, in the matter *sub judice*, the Court finds that the provisions in Title 10, Section 122, *et seq.*, the Whistleblowers Protection Act, take precedence over the general provisions found in Title 3, Section 472 of the Virgin Islands Code, as to all matters covered by the Whistleblowers Protection Act.

■ Informatively, Title 10, Section 123(b) vests jurisdiction in the Territorial Court to hear complaints filed under the Whistleblowers Protection Act. Section 123(b) provides in pertinent part that the action under the Whistleblowers Protection Act may be commenced in the *"Territorial Court* division where the alleged violation occurred, . . . where the complainant resides, or the division where the person against whom the [] complaint is filed resides . . . ."* (emphasis added) Therefore, a party seeking to bring a wrongful discharge action under the Whistleblowers Protection Act must file a complaint *in the Territorial Court* within ninety (90) days of the alleged violation. Accordingly, in the present case, the Court finds that the Respondent lacks jurisdiction over Petitioner's claim that he was improperly terminated from the position of GERS Administrator, in violation of the Virgin Islands Whistleblowers Protection Act.

*4. Petitioner's Political Affiliation Claim.*

Before addressing the issue of section 531, the Court is compelled to make the following prefatory comments. First, Petitioner's letter which is dated November 19, 19(sic), which the Court assumes is November 19, 1993, mentions section 531 several, or at least four (4) times. The November 19, 1993 letter which served as Petitioner's Petition for his appeal to the GESC, never explicitly specified whether he was proceeding under both subsections (a)

105

and (b) of section 531, or whether he was only proceeding under subsection (a) of section 531 or whether he was only proceeding under subsection (b) of section 531. Further exacerbating the matter is the fact that GESC, in its January 24, 1994 Decision and Order, only states section 531 and painfully neglected to specify whether it considered Petitioner's appeal under both subsections (a) and (b) or only under subsection (b) of section 531. The neglect by both parties posed a problem for the Court.

Nonetheless, from the tenor and language in GESC's Decision and Order, the Court will assume that the decision is limited only to subsection (b) of section 531, in which the GESC makes a distinction between "employee" and "officer", a distinction which the Court finds raises the suggestion that only subsection (b) of section 531 was considered by the GESC. Therefore, the Court will only address the issue of subsection (b) of section 531 on appeal. Whatever the parties may state in their respective briefs concerning section 531(a) is irrelevant, because the briefs were filed in this Court and not before the GESC for its consideration. The matters that are stated in the petition of appeal and the GESC's decision are the matters before this Court on appeal. Therefore, the Court can only consider on appeal what was before the GESC at the time GESC made its decision.

In his appeal Petitioner alleged that he was discharged from the position of GERS Administrator because of his political opinion or affiliation. [Transcript of GESC's 12/15/94 hearing, page 50]. However, the GESC dismissed Petitioner's appeal on a jurisdictional basis; thereby failing to address Petitioner's assertion in its decision. Importantly, Title 3, Section 531(b) provides in pertinent part that:

> (b) *Any applicant or employee who has reason to believe that he has been discriminated against because of . . . political opinions or affiliations . . . in any personnel action may appeal to the Commission. [Moreover] the appellant . . . shall have the right to be heard and present evidence.*

(emphasis added).

The starting point for interpreting a statute is its plain Language. *Mansell v. Mansell*, 490 U.S. 581, 588, 109 S.Ct. 2323, 104 L.Ed.2d 675

(1989). Likewise, when interpreting a statute, the Court Looks first to its plain meaning and if the language is unambiguous no further inquiry is necessary. *Licata v. United States Postal Services*, 33 F.3d 259, 261 (3d Cir. 1994), *see also Sacred Heart Medical Center v. Sullivan*, 958 F.2d 537, 545 (3d Cir. 1992).

Thus, the Court finds that by its explicit and unambiguous language, Title 3, Section 531(b) vests specific jurisdiction in the GESC to hear an applicant's or employee's claim that he or she was terminated from a position as a result of his or her political affiliations. Moreover, even if Molloy falls within section 531(b), he still must hurdle the "employee"/"officer" dichotomy.

In the matter sub judice, the GESC asserts that it has no jurisdiction to hear Petitioner's claim pursuant to 5 V.I.C. 531, because Petitioner is an "Officer" and not an "employee" as the term employee is used in section 531. Therefore, the question is whether Petitioner is an officer or an employee by virtue of his position as the GERS Administrator. The Court can find no case law specifically addressing this issue in the Virgin Islands.

The Virgin Islands Code, particularly Chapter 25 of Title 3, is silent on the definition of "employee" and "officer". However, section 451a of Title 3, Chapter 25 uses both terms in the context of them meaning different things. For example, the language in subsection (b)(8) of section 451a states in pertinent part "an officer or employee in a position of a policy-determining nature; . . . ." Importantly, the term "officer" in subsection (b)(8) means an officer other than one elected by popular vote, because in the same section 451a in another subsection, subsection (b)(2), the language reads in pertinent part "(b)(2) . . . officers elected by popular vote. . . ," to cover separately those officers elected by popular vote from those appointed or non-elected officers.

If Petitioner is allowed to appeal under 3 V.I.C. 531(b) because he contends that he is being discriminated against because of his political opinion or affiliation, it would be inconsistent and incongruous with his exempt status under 451a which expressly allows for his dismissal, without any recourse of an appeal, for officers and employees in policy-determining positions or positions that require a confidential relationship to a policy making official, board or commission.

107

Significantly, the Legislature, in promulgating Title 3, Chapter 25, section 531(b) certainly was aware that an officer and an employee have a different status. The statute, section 451 of Title 3, Chapter 25, speaks of "officers elected by popular vote" and "officers and employees" in different sub-subsections of subsection (b) which must be interpreted to give different meanings to both. Yet, in the same Chapter 25 of Title 3, the Legislature expressly omitted the word "officer" in section 531(b) as a class of persons to be covered by section 531. This Court concludes that the omission of "officers" from section 531(b) was not an oversight, but was a conscious exclusion. Because both statutes, section 451 and section 531(b), are in the same Title 3, in the same chapter 25 and address a common subject matter, the Court finds that the omission of "Officer" from section 531(b) was not an oversight.

The Court finds that Petitioner is an "Officer". First, Petitioner's appointment is not by examination or by NOPA (Notification of Personnel Action), through the Division of Personnel as is the procedure for both exempt and non-exempt employees. Rather, Petitioner's appointment is made by the GERS Board of Trustees with the advice and consent of the Legislature. See 3 V.I.C. § 715(c). Thus, a part of the procedure, which is Legislative confirmation, for Petitioner's appointment is similar to that of a cabinet post or department or agency head, and unlike that of the many thousands of both exempt and non-exempt government employees' appointments.

Secondly, Petitioner's job specifications, or at least part of them, are by statutory law, and are not promulgated by the Director of Personnel who assigns job specifications for positions being held by employees in both exempt and non-exempt positions. (see 3 V.I.C. 452 and 3 V.I.C. 715 (c) and (d))

Thirdly, Petitioner's position is comparable to that of an agency or department head as illustrated by the language in 3 V.I.C. 715(e) which states that "the Administrator . . . shall be in charge of the detailed affairs of the system. . . . The Administrator shall administer the business of the system and be responsible for its proper operations. . . ."

Fourthly, Petitioner is a policymaker and is in a confidential relationship with his superiors, which is unlike the relationship of

108

low or middle management administrators in the government employment system, who would be called "employees".

Fifthly, by statute, Petitioner has broad supervisory powers in discharging the duties of his job, which is unlike most employees in both exempt and non-exempt positions who have written job specifications.

■ Accordingly, the Court concludes that Petitioner is an officer and, therefore, not covered by section 531(b) for an appeal of his termination based upon political opinion or affiliation. The Court expresses no opinion on whether Petitioner would have a right to an appeal had his appeal involved a "promotion" or a "hiring" instead of a termination.

Further, the matter is remanded to the GESC or its successor body to make a determination as to whether Petitioner appealed his termination under subsection (a) of section 531. If Respondent, or its successor, finds that Petitioner did in fact appeal his termination under subsection (a) of section 531, that body must make a determination of whether the GESC had jurisdiction to hear Petitioner's appeal under subsection (a) of section 531 at the time of Petitioner's appeal based upon the allegations in his letter or petition for appeal. If GESC had no jurisdiction, the body shall so state, and the reason or reasons supporting its decision. If GESC had jurisdiction at the time of Petitioner's appeal, the body shall then proceed to hear Petitioner's appeal on the merits pursuant to section 531(a).

### III. CONCLUSION

In conclusion, the Court affirms the GESC's January 20, 1994 Decision and Order that GESC lacked jurisdiction to hear Petitioner's appeal pursuant to sections 530 and 531 (b) of Chapter 25, Title 3 of the Virgin Islands Code. The Court also finds that GESC has no jurisdiction to hear any claims by Petitioner that are cognizable under the Whistleblowers Protection Act. Therefore, the Respondent's January 20, 1994 Decision and Order in the above-entitled matter are affirmed, in part, and remanded on the limited issue of whether Petitioner is appealing his termination under subsection (a) of section 531, and whether GESC had jurisdiction to hear Petitioner's appeal under subsection (a) of section 531.

*SECTION 530(a) Dismissals, demotions, and suspensions; procedure*

(a) Notwithstanding any other provision of law, in any case after January 1, 1977, where a department head, including the Executive Directors of the Virgin Islands Water and Power Authority and the Virgin Islands Port Authority, decides to dismiss, demote, or suspend a regular employee, or employee of the Virgin Islands Water and Power Authority or the Virgin Islands Port Authority, for cause, he shall furnish the employee with a written statement of the charges against him. The employee shall have ten days following the date of receipt of said statement of the charges to appeal the proposed action to the Government Employees Service Commission. Such appeal shall be in writing and a copy shall be furnished to the department head and the Attorney General by the Commission.

*SECTION 531(a) and (b) Discrimination on account of nonmerit factors; appeals*

(a) No question in any form of application or in any examination shall be so framed as to elicit information concerning the political or religious opinions or affiliations or race of any applicant, nor shall any inquiry be made concerning such opinions or affiliations and all disclosure thereof shall be discountenanced. No discriminations shall be exercised, threatened, or promised by any person in the government service against or in favor of any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action, because of political or religious opinions or affiliations or because of race or national origin, or any other nonmerit factor.

(b) Any applicant or employee who has reason to believe that he has been discriminated against because of religious or political opinions or affiliations or race or national origin in any personnel action may appeal to the Board. The appellant and the person responsible for the alleged discriminatory action shall have the right to be heard and to present evidence. If the Commission finds that there was discrimination on any of the above nonmerit factors it shall order appropriate corrective action and its decision shall be final. Added September 2, 1994, No. 6010, Sess. L. 1994, p. 164.

*SECTION 530(a) Dismissals, demotions, and suspensions; procedure*

(a) Notwithstanding any other provision of law, in any case after January 1, 1977, where a department head, including the Executive Directors of the Virgin Islands Water and Power Authority and the Virgin Islands Port Authority, decides to dismiss, demote, or suspend a regular employee, or employee of the Virgin Islands Water and Power Authority or the Virgin Islands Port Authority, for cause, he shall furnish the employee with a written statement of the charges against him. The employee shall have ten days following the date of receipt of said statement of the charges to appeal the proposed action to the Public Employees Relation Board. Such appeal shall be in writing and a copy shall be furnished to the department head and the Attorney General by the Board.

*SECTION 531(a) and (b) Discrimination on account of nonmerit factors; appeals*

(a) No question in any form of application or in any examination shall be so framed as to elicit information concerning the political or religious opinions or affiliations or race, age or sex of any applicant, nor shall any inquiry be made concerning such opinions or affiliations and all disclosure thereof shall be discountenanced. No discriminations shall be exercised, threatened, or promised by any person in the government service against or in favor of any person in recruitment, examination, appointment, training, promotion, retention or any other personal action, because of political or religious opinions or affiliations or because of race, age or sex, national origin, or any other nonmerit factor.

(b) Any applicant or employee who has reason to believe that he has been discriminated against because of religious or political opinions or affiliations or race, age or sex or national origin in any personnel action may appeal to the Board. The appellant and the person responsible for the alleged discriminatory action shall have the right to be heard and to present evidence. If the Board finds

that there was discrimination on any of the above nonmerit factors it shall order appropriate corrective action and its decision shall be final. Added September 2, 1994, No. 6010, Sess. L. 1994, p. 164.