**TUTU PARK LIMITED, as Lessee and Authorized Representative of the Heirs of Sammy Harthman, Petitioner**

**v.**

**VIRGIN ISLANDS BOARD OF TAX REVIEW, Respondent**

Civ. No. 455/1996

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

March 24, 1998

WILLIAM L. BLUM, ESQ., (Grunert Stout & Bruch), St. Thomas, U.S.V.I., *for Petitioner*

HUGH, GREENTREE, ESQ., (Virgin Islands Department of Justice), St. Thomas, U.S.V.I., *for Respondent*

HOLLAR, *Judge*

### MEMORANDUM OPINION

This matter is before the Court on Tutu Park Limited's application for writ of review of the June 4, 1996 decision by respondent

upholding the assessment of petitioner's property by the Tax Assessor of the Virgin Islands. The issue presented is whether the Board of Tax Review had substantial evidence to uphold the tax assessor's assessment of petitioner's property. For the reasons stated below, the Court holds that the Tax Board of Review did not have substantial evidence to uphold the tax assessor's assessment.

## I. Facts and Procedural History

The petitioner requests review and reversal of an assessment conducted by the Virgin Islands Tax Assessor of the land underlying the Tutu Park Mall for the years 1992 and 1993. The petitioner, while owning Tutu Park Mall, merely leases the underlying land which is the subject of the assessment. The improvements to the land, to wit: the Tutu Park Mall, were not assessed for tax purposes because the petitioner was a recipient of a tax abatement through an Industrial Development Commission (IDC) exemption.

Petitioner became lessee of the property, described as 26 Estate Charlotte Amalie, bearing Parcel Identification No. 1-05603-0199-00, by partial assignment of a 1987 lease between petitioner's assignor, P.I.D., Inc., and the heirs of Sammy Harthman. In 1992 and 1993, petitioner constructed Tutu Park Mall on the underlying land. During the planning stages, the Environmental Protection Agency (EPA) required that the water wells under the property be capped because of a potential for contamination from leakages on surrounding properties. As a result, the property was declared a Superfund site. Plans for the construction of the Tutu Park Mall then changed to include a cistern and water collection system since the original water source was shut off.

Sometime in 1993, the tax assessor assessed the land for the year 1992 at $7,487,827 and issued a tax bill for $93,597.84.[1] On December 13, 1994, the tax assessor reduced the assessment and tax and issued a new tax bill for 1992 and 1993 indicating a value of $5,533,239 for each year. Based on this assessment, the land was taxed at the rate of $69,165.49 for each year.

---

[1] The tax bill is 1.25% of the assessed value.

120

From the terms of the original lease, petitioner assumed the obligation to pay all property taxes assessed by the tax assessor on the land. By letter dated September 9, 1994, the Harthman family authorized the petitioner to appeal property tax assessments on their behalf. Thus, petitioner appealed the assessment to the Virgin Islands Board of Tax Review, pursuant to V.I. CODE ANN. tit. 33, § 2451, and, as required by that Code section, paid all taxes due, under protest pending the outcome of the appeal. On appeal, petitioner contended that since it had a leasehold interest, the land value should have been based on the income approach, not the comparable sales approach.

On August 17, 1997, respondent heard petitioner's appeal. Petitioner's expert witness, Mr. Kenneth Wilson, testified at the hearing that while the income approach was not the prevailing method utilized for obtaining the value of vacant land, it was nonetheless an appropriate approach where the property is encumbered by a long-term land lease that is tied to market rent. He based his opinion on a clause in the lease which allows the landlord to collect additional rent based on the market value of the rents.

While Wilson readily admitted that generally the sales comparison approach is more appropriate to value unimproved land, he nevertheless relied on the income approach because of the absence of another property comparable in size, use and location to the property underlying Tutu Park Mall. Using the income approach, Wilson arrived at a value for the property by analyzing the rent rolls for Tutu Park Mall to determine the future income stream and discounting this to present value along with the reversion or profit to be realized upon resale. Mr. Wilson figured a discount rate of 12 percent, representing five percent above the average interest prime rate for the years 1991 to 1995. The prime interest rate ranged from 8 to 6 percent from 1991 to 1993, and was about 7.3 percent in 1994 and around 9 percent in March of 1995. The additional five percentage points arose from applying certain factors based on assumptions as represented by Mr. Wilson.

Wilson further testified that in addition to using the income approach, a reduction should be taken because the area has been designated as a Superfund clean-up site by the EPA and a potential

buyer may consider this in his purchase of the property. Wilson accounted for the contamination by using a higher discount rate of 17 percent and presented the figure in his report as an impaired value.

On June 4, 1996, the respondent issued its decision affirming the assessment without a detailed opinion. Tutu Park, Ltd. petitioned the Court for a writ of review on June 26, 1996. The petition was granted on January 27, 1997.

Petitioner, in its brief, contends that no methodology was offered and, in any event, the tax assessor did not determine a discount rate as required by law. Petitioner further asserted that the contamination should have been considered to reduce the value of the property. Respondent maintains that the tax assessor also used the income approach in arriving at the assessed value of the land.

## II. Standard of Review

■■ The preliminary question the Court must address is the applicable standard of review on appeals of decisions of the Board of Tax Review. In reviewing a decision, the court may not substitute its judgment concerning facts for that of the Board of Tax Appeals. *Helvering v. National Grocery, Co.*, 304 U.S. 278 (1938). Where the findings of the Board are supported by substantial evidence they must be accepted. *Id.* The term substantial evidence refers to such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Consolo v. Federal Maritime Com.* 383 U.S. 607, 16 L. Ed. 2d 131, 86 S. Ct. 1018 (1966). It is the burden of petitioner to show affirmatively noncompliance with the statutory requirements as would invalidate the assessment. *Ricardo v. Ambrose*, 211 F.2d 212 (3rd Cir. 1954).

## III. Discussion

Petitioner's position is that the Tax Board should have used the income approach because the Tutu Park property is leased and tied to market rents. They further argue that the contamination of the Tutu Park property and surrounding properties should have been factored into the assessed value of the property. This Court does not hold that the income approach, in particular, should be used or that the contamination should have been considered in the assess-

ment, rather it holds that the evidence does not substantially support the Tax Board's decision and that the assessment was conducted contrary to law. The Tax Board's finding that the contamination should have been excluded as a factor was supported by substantial evidence.

### A. Valuation Method

The Virgin Islands Code is specific as to which approach the tax assessor must use in valuing property. V.I. CODE ANN. tit. 33, § 2404 states that:

(a) In computing the actual value of real property subject to taxation, the assessor shall take in consideration all of the following elements and incidents—

(1) location and surroundings;

(2) quality and fertility;

(3) condition of structures;

(4) recent cost to present owner;

(5) recent sale of adjacent property;

(6) recent bona fide offer;

(7) accessibility;

(8) proximity to public facilities;

(9) rental or income derived directly from the property.

(b) If the property being assessed is commercial property, the assessor may utilize a capitalization of income method of assessment in conjunction with utilization of factors listed in subsection (a) of this section so long as the utilization of such method results in a greater assessment than if not utilized. For purposes of this section, the 'capitalization of income method' is a method of assessing commercial property by the conversion of rent to the real property value by the utilization of a capitalization rate applicable to the type of property involved. Determination of the capitalization rate shall be made by the Tax Assessor of the Virgin Islands after careful consideration of the comparable rate used by lending institutions.

After reviewing the transcript of the hearing, it became evident that the tax assessor did not follow the Virgin Islands Code in determining the value of the property. In fact, he appeared not to know which method, if any, he used to determine the value of the real property. He wavered on inquiries into which method he utilized. During the tax assessor's testimony, the following exchange ensued:

Q. "Well, If I might ask, Mr. Callwood, if, from his comments, are you accepting the income approach to value or are you—"

A. "I have no fight with that because we came pretty close, and I have reduced it in agreement. As far as I am concerned that's fine. Right? I have no fight with this method and so forth...."

Q. "What method did you use."

A. "Pretty much the same thing."

Q. "For the income method."

A. "And the fact that he came to seven and I came to nine doesn't mean I am going to change my mind."

Q. "Mr. Callwood, when you [had] the original and you revised it to nine million.... I mean twelve million to nine million — what was your basis for doing that"?

A. "Well, there were several bases. Number one, you must remember that this land was appraised before the Tutu Mall was built. So there was no income stream. There was nothing to use other than sales in the area. And the sales in the area indicated around, what he said, between five and fifteen. We found eleven. And based on $ 11 per square foot times the 26 acres, we came down to that answer ... And you could use sales. And any appraisal he makes with the income approach would also show, if he could find the information, the market method."

124

Q. "So you revised it based on income."

A. "Yes, after he presented his income stream and so forth."

■ Not only did the tax assessor equivocate regarding the method he used, he used the income approach contrary to the provisions of Section 2404 of Title 33 Virgin Islands Code. First, the tax assessor is allowed to use the income approach only if using the approach would increase the assessment for actual value. Here, the tax assessor used the income approach to lower the value to the current assessed value.[2] Second, the tax assessor must also use the income approach in conjunction with considering the factors listed in Section 2404(a). The assessor's testimony does not indicate where he considered any of those factors in valuing the property. Third, when the tax assessor uses the income approach, he alone must determine the capitalization rate after careful consideration of the comparable rate used by financial institutions. Here, he relied on the rate determined by the petitioner, which again is contrary to his obligations under the Code.

Because the tax assessor's testimony regarding his method of assessment was: (1) replete with unreliable, vague and indefinite statements; (2) lacking in compliance with the provisions of V.I. CODE ANN tit. 33, § 2404; and (3) lacking in evidence to reject the petitioner's expert witness, the Tax Review Board's decision was unsupported by substantial evidence.

*B. Contamination Factor*

Petitioner asserts that the contamination should have been considered to lower the value of the property. The tax assessor, however, testified and gave a detailed and committed explanation as to why he did not consider the contamination. He stated several times throughout his testimony that the effect of the contamination was speculative and that it did not currently affect the income stream or give any indication that it would affect the income stream in the future. He emphasized that the rents were increasing

---

[2] During his testimony, the tax assessor used the actual values to explain his method at times, and at other times he used the assessed value. However in both cases, the percentage of decrease is the same. The assessed figures are about $7.4 million reduced to about $5.5 million.

and that the petitioner failed to show a decrease in the rents because of the contamination.

The Tax Board questioned petitioner's expert extensively about whether the rents were affected. The expert could not show any effect from the contamination now or in the immediate future. He also admitted that the contamination was not the fault of the Tutu Park, Mall, Ltd. So, he could only state that there is a risk of liability but could not identify where a potential purchaser may be subject to liability where third parties are at fault. His testimony also indicated that the Superfund site was near as opposed to being directly on the property, albeit, some wells on the property were found to be contaminated.

■ The speculative nature of the effect of the contamination on the income stream, coupled with the fact that the wells were capped and an alternative source of water was found, indicates that the Tax Review Board had substantial evidence to reject the use of the contamination factor to reduce the value of the property. Furthermore, since the tax assessor was not required to consider contamination as a factor by Section 2404, no violation of the law could be relied upon to show a lack of substantial evidence in that regard.

**IV. Conclusion**

In summary, the Tax Review Board's decision to uphold the tax assessor's assessment was not supported by substantial evidence, but its refusal to consider the contamination as a factor was supported by substantial evidence. Therefore, the decision of the Tax Review Board is reversed, in part, and remanded for an assessment to be conducted in accordance with applicable law.

DATED: March 24, 1998.