The **CYRIL V. FRANCOIS ASSOCIATES, LLC,** Plaintiff,

v.

**GOVERNMENT OF THE VIRGIN ISLANDS, and Roy Martin, in his official capacity as Tax Assessor, Defendants.**

No. CIV.2001–196.

District Court, Virgin Islands, D. St. Thomas and St. John.

April 12, 2004.

David Bornn, Esq., St. Thomas, VI, for Plaintiff.

Kerry E. Drue, Esq., St. Thomas, VI, for Defendants.

## MEMORANDUM

MOORE, District Judge.

On May 12, 2003, I found the Territory's property tax system unlawful because it "systemically employ[ed] a method of assessment not calculated to determine the actual value of properties as required by 48 U.S.C. § 1401a." *Berne Corp. v. Government of the Virgin Islands*, 262 F.Supp.2d 540, 561 (D.Vi.2003) [*Berne Corp. II*]. Accordingly, I entered a decree in the consolidated portion of this case awarding injunctive and other such relief

common to all parties. All that remains for resolution in this case is application of this decree to the unique facts posed in this individual action brought by plaintiff Cyril V. Francois Associates, LLC ["Francois"], including its request for declaratory relief regarding the actual value of the parcels of real property it owns.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Francois is a Virgin Islands limited liability company that challenged the assessments of certain commercial real properties on St. Thomas, Virgin Islands, namely Annas Retreat 5B, Queens Street 14, 1 Guttets Gade, Crown Prince Street 1, 20 Crystal Gade, Bred Gade 4, Nye Gade 4, Norre Gade 41, and Norre Gade 42. I hereby adopt and incorporate by reference each of the conclusions of law made during the trial of the consolidated tax cases in this matter, as set forth in my May 12, 2003 Memorandum Opinion. I will now set forth the specific findings of fact and conclusions of law for each property involved in this matter.

### A. 5B Anna's Retreat (Tax Parcel No. 1–05604–0311–00)

■ Francois owns the real property located at 5B Anna's Retreat. (Francois Tr. at 5.) Believing that the government had overvalued its property, Francois appealed its 1999 and 2000 property tax assessments to the Board of Tax Review. (*Id.* at 6–7.; Pl.'s Ex. 4, 4a.) Francois has never received a hearing from the Board of Tax Review. (*Id.* at 28.) Although Francois appealed its 1999 and 2000 property tax assessments, it paid to the government the full amount of the tax due for this property for both the 1999 and 2000 property tax years. (*Id.* at 35.)

At the trial in this individual case, Linda Sheviski, Francois' assistant manager, tes-

tified that the water and soil underneath the land was contaminated and that the property was subject to currently pending litigation regarding the contamination. (*Id.* at 7.) Elissa Runyon, a certified land appraiser, testified that the value of the property for the 1999 and 2000 property tax years was zero or less than zero, due to the contamination at the site. (*Id.* at 43.) In contrast, the Tax Assessor assessed this property as worth $1,015,092 and $1,344,265 for, respectively, the 1999 and 2000 property tax years. (Def.'s Ex. F–I.)

The government did not present testimony or any other evidence that sufficiently discredited Runyon's assessment. Instead, at the trial of this individual case and again in its proposed findings of fact and conclusions of law, the government cites the Territorial Court's decision in *Tutu Park Limited v. Virgin Islands Board of Tax Review* for the proposition that the Tax Assessor is not required to consider contamination as a factor in assessing property value under the Virgin Islands Code. 38 V.I. 119, 1998 WL 182815 (Terr.V.I.1998). The government's reliance on *Tutu Park* is misguided, as the trial judge ruled that the Tax Assessor was not required to consider contamination in assessing the property because the contamination was speculative and did not affect the property's value. *Id.* at 125–26, 1998 WL 182815. In contrast, Runyon's uncontradicted expert opinion on the impact of the contamination on the property value of 5B Anna's Retreat is reliable and anything but speculative.

Furthermore, 33 V.I.C. § 2404 provides that in computing the actual value of real property subject to taxation, the assessor shall take into consideration the "quality" of the property. Any assessment of the "quality" of the real property located at 5B Anna's Retreat would necessarily include consideration of the contamination that, in the uncontraverted opinion of a certified

land appraiser, renders the property worthless. Accordingly, I will vacate the respective tax assessments for this property.

### B. Queens Street 14 (Tax Parcel No. 1–05302–4108–00)

■ Francois owns commercial real property consisting of office and retail space located at Queens Street 14. (Francois Tr. at 9–11.) Sheviski testified that Francois' property taxes increased substantially from the 1998 to 1999 tax year even though Francois had made no substantial improvements to the property. (*Id.* at 10.) Believing that the Tax Assessor's 1999 property tax assessment were therefore inaccurate, Francois appealed its 1999 property tax assessment to the Board of Tax Review. (*Id.* at 9.; Pl.'s Ex. 7.) Francois also appealed its 2000 property tax assessment. (Pl.'s Ex. 7a.) Francois has never received a hearing from the Board of Tax Review. (*Id.* at 28.) Notwithstanding the appeals, Francois paid to the government the full amount of the tax due for this property for both the 1999 and 2000 property tax years. (*Id.* at 35.)

Runyon testified that the value of the property for the 1999 property tax year was $1,578,000. (Francois Tr. at 44.) Runyon also testified that the value of the property remained $1,578,000 for the 2000 tax year. (Francois Tr. at 45.) The government, in contrast, assessed the property at $1,966,467 and $1,950,819 for, respectively, the 1999 and 2000 property tax years. (Def.'s Ex. F–B.) The government presented no evidence convincing me that these assessments were accurate, nor did it successfully undermine Sheviski or Runyon's testimony. Accordingly, I will vacate the respective tax assessments for this property.

### C. 1 Guttets Gade (Tax Parcel No. 1–05302–4310–00) and Crown Prince Street 1 (Tax Parcel No. 1–05302–4311–00)

■ Francois owned commercial real property located at 1 Guttets Gade and Crown Prince Street 1, which it sold in 2002. (Francois Tr. at 11–13.) This real property is a single building with one roof that occupies both 1 Guttets Gade and Crown Prince Street 1. (*Id.* at 11.) Francois appealed its 1999 and 2000 property tax assessments for 1 Guttets Gade, but only appealed its 2000 property tax assessment for Crown Prince Street 1. (*Id.* at 12–13; Pl.'s Ex. 10, 10a, 12.) Francois has never received a hearing from the Board of Tax Review on any of these appeals. (*Id.* at 28.) Although Francois appealed these tax assessments, it paid to the government the full amount of the tax due for these two properties for both the 1999 and 2000 property tax years. (*Id.* at 35.)

Runyon testified that she appraised the two parcels together "because they are contiguous and utilized as one entity." (*Id.* at 46.) In her expert opinion, their combined worth was $314,500 and $314,500 for the 1999 and 2000 property tax years, respectively. (*Id.*) According to the Tax Assessor, the combined value of these two properties for the 1999 and 2000 property tax years was, respectively, $357,116 and $355,872. The Tax Assessor appraised 1 Guttets Gade at $66,180 for the 1999 property tax year and $65,966 for the 2000 property tax year and Crown Prince Street 1 at $290,936 for the 1999 property tax year and $289,906 for the 2000 property tax year. (Def.'s Exs. F–F, F–E.)

In February, 2002, Francois sold this property for $400,000 to the building's long-term tenant, the Shahani Corporation. (*Id.* at 15–16, 46.) The sale price, however, did not reflect the property's actual market value because the long-term tenant paid a premium for the convenience of not having to move its business. (*Id.* at 46.) The government presented no evidence reasonably contradicting Runyon's assessment or supporting the Tax Assessor's assessment. Accordingly, I will vacate the respective tax assessments for these properties.

### D. 20 Crystal Gade (Tax Parcel No. 1–05401–3610–00)

Francois owns commercial real property at 20 Crystal Gade, consisting of office space. (Francois Tr. at 17.) Francois appealed its 2000 property tax bill for this property because it suspected the government's assessments were too high. (*Id.* at 17–18; Pl.'s Ex. 15.) Francois has never received a hearing from the Board of Tax Review. (*Id.* at 28.) Francois paid to the government the full amount of the tax due for this property for the 1999 and 2000 property tax years. (*Id.* at 35.)

Runyon testified at trial that the value of the property was $167,000 for the 1999 and 2000 property tax years. (*Id.* at 47.) The government presented no evidence reasonably contradicting Runyon's assessment, nor did the government show that the Tax Assessor's valuations were accurate. Accordingly, I will vacate the respective tax assessments for this property.

### E. Nye Gade 4 (Tax Parcel No. 1–05401–3412–00) and Bred Gade 4 (1–05401–3411–00)

■ Francois owns commercial real property at Bred Gade 4 and Nye Gade 4, which are adjoining properties consisting of rental apartments. (Francois Tr. at 18–20.) These two properties also adjoin two small, vacant parcels of land designated as Bred Gade 5a and Bred Gade 5b. (*Id.* at 47–48.) Francois appealed its 2000 property tax bills for Bred Gade 4 and Nye Gade 4. (*Id.* at 19–20.) There was no evidence presented at trial in this individual

case that Francois appealed any property tax bills for Bred Gade 5a or Bred Gade 5b. Francois has never received a hearing from the Board of Tax Review on its appeals of its 2000 property tax bills for Bred Gade 4 and Nye Gade 4. (*Id.* at 28.) Although Francois appealed its 2000 property tax assessments for Nye Gade 4 and Bred Gade 4, it paid to the government the full amount of the tax due for both of these properties for the 2000 property tax year. (*Id.* at 35.) Francois also paid the full amount of property tax due for both of these properties for the 1999 property tax year. (*Id.*)

Runyon testified that the value of all four parcels was $125,000 for both the 1999 and 2000 tax years. (*Id.* at 47–49.) Although the two small, vacant parcels of land located at Bred Gade 5a and Bred Gade 5b were not worthless, Runyon included them in her appraisal because she thought it is "very unlikely" that Francois could sell those two parcels separately from Nye Gade 4 and Bred Gade 4. (*Id.* at 48.) According to the Tax Assessor's assessments, the combined value of Bred Gade 4 and Nye Gade 4 for the 1999 and 2000 tax years was, respectively, $438,111 and $432,730. The Tax Assessor assessed Nye Gade 4 at $270,767 for the 1999 property tax year and $267,456 for the 2000 property tax year, (Def.'s Ex. F–G.), and Bred Gade 4 at $167,344 for the 1999 property tax year and $165,274 for the 2000 property tax year. (Def.'s Ex. F–H.)

In its proposed findings of fact and conclusions of law, Francois suggests that I find the combined actual value of Nye Gade 4 and Bred Gade 4 is $125,000 for the 2000 property tax year. Runyon's appraisal included the two adjoining vacant lots and does not support a conclusion that they have no value. Accordingly, I cannot adopt Francois' proposed finding that the combined value of *only* Bred Gade 4 and Nye Gade 4 is $125,000.

Francois did present sufficient evidence, however, to support a conclusion that the value of all four parcels was $125,000 for the 1999 and 2000 property tax years. The government, on the other hand, did not present any evidence at the trial in this individual case reasonably demonstrating that the Tax Assessor's assessments of Nye Gade 4 and Bred Gade 4 were accurate. Nor did the government convince me that Runyon's appraisal of the four properties were inaccurate. Thus, I conclude that the value of Nye Gade 4 and Bred Gade 4 is less than $125,000, although Francois did not establish the precise value of these two parcels below $125,000. Because Francois presented sufficient evidence to demonstrate that the Tax Assessor's assessments were inaccurate, I will vacate the respective tax assessments for these properties.

### F. Norre Gade 41 (Tax Parcel No. 1–05401–4504–00) and Norre Gade 42 (Tax Parcel No. 1–05401–4503–00)

Francois owns commercial real property located on Norre Gade 41 and Norre Gade 42. (Francois Tr. at 23.) The building located at 42 Norre Gade consists of rental office space. (*Id.* at 25–26.) The building located at 41 Norre Gade is over a century old and was gutted in 1994 and remained in unusable condition until Francois began repairs in 2002. (*Id.* at 24.) Despite the building's dilapidated state, the Tax Assessor assessed Norre Gade 41 at $613,480 and Norre Gade 42 at $543,133 for the 1999 property tax year. Believing the Tax Assessor's assessments were excessive, Francois appealed the 1999 property tax assessment for Norre Gade 42. (Pl.'s Ex. 27.) The following tax year, Francois appealed the property tax assessments for both properties. (Pl.'s Ex. 24, 27a.)

Runyon testified that the combined value of both properties was $312,500 for both

the 1999 and 2000 tax years. (*Id.* at 49.) As with the group of properties located on Nye Gade and Bred Gade, and as with the building located at 1 Guttets Gade and Crown Prince Street 1, Runyon issued a single appraisal for both Norre Gade 41 and Norre Gade 42. Runyon testified such a single assessment was appropriate

> because of their location, they're a little island onto themselves. And I believe that a potential purchaser would be interested in the whole property, rather than just a portion of it.

(Francois Tr. at 49–50.)

In contrast to Runyon's combined valuation of $312,500, the Tax Assessor's total assessed value for both properties during the 1999 and 2000 property tax years was, respectively, $1,156,613 and $1,106,305. The Tax Assessor assessed the property value of Norre Gade 41 at $613,480 for the 1999 property tax year and $638,822 for the 2000 property tax year, and Norre Gade 42 at $543,133 for the 1999 tax year and $467,483 for the 2000 property tax year. (Def.'s Ex. F–D, F–C.) Thus, the aggregate of the government's valuation of both properties was, respectively, $844,113 and $793,805 more than Runyon's combined assessment for the 1999 and 2000 property tax years.

The government presented no evidence at trial that the Tax Assessor's assessments were accurate or that the Runyon's appraisal was flawed. While Runyon's method of assessing the two parcels together again leaves me guessing at the individual worth of each parcel, there is sufficient evidence to conclude that the Tax Assessor overvalued these parcels. Accordingly, I will vacate the respective tax assessments for these properties.

## II. REMEDIES

### A. Remedies for 5B Anna's Retreat, Queen Street 14, and 20 Crystal Gade

Having reviewed the testimony and evidence presented by the plaintiffs in this individual case, and noting the inability of the government to produce any evidence to support its assessments, I find that the plaintiff has presented sufficient evidence to show that its proposed values for 5B Anna's Retreat, Queen Street 14, and 20 Crystal Gade are credible and that the government's values for these properties are overinflated and not credible. Accordingly, as per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept the plaintiff's proffered property values as good faith estimates of the value of these properties and will declare them to be the actual values and order the government to treat them as the assessed values until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. The related tax liabilities for the plaintiff's 1999 and 2000 property taxes shall be based on these values, pending reassessment.[1]

Given that the plaintiff paid all of its 1999 and 2000 tax bills for these properties, it is entitled to a credit of the paid amount plus interest at the statutory rate of twelve percent from the date each tax bill was paid. The government may not apply this credit to any future property tax obligation without the tax payer's consent. The government may, however, choose to refund this credit and interest to the plaintiff.

---

1. The plaintiff's findings of facts and conclusions of law did not propose tax liabilities to correspond to its suggested 1999 and 2000 property tax values. As this issue has not been addressed by the plaintiff, I leave it to the parties to calculate the respective taxes.

## B. Remedies for 1 Guttets Gade, Crown Prince Street 1, Bred Gade 4, Nye Gade 4, Norre Gade 41, and Norre Gade 42

The plaintiff has provided adequate evidence to demonstrate that the Tax Assessor's assessments for 1 Guttets Gade, Crown Prince Street 1, Bred Gade 4, Nye Gade 4, Norre Gade 41, and Norre Gade 42 are overinflated and not credible. Given that the plaintiff's 1999 and 2000 property taxes were calculated from these overinflated assessments and that the plaintiff paid these inaccurate tax bills, it is entitled to a credit, with interest, for the amount it overpaid.

The plaintiff, however, has failed to produce evidence of the precise value of each of these parcels of property. I thus have no basis for determining the extent to which the plaintiff has overpaid its 1999 and 2000 property tax bills; the plaintiff will have to wait for the Special Master's certification that the Territory's assessment system is capable of assessing properties at their actual value. Once the government is capable of accurately assessing property, these properties shall be reassessed and a determination made regarding the extent to which the plaintiff overpaid its 1999 and 2000 property tax bills for these properties. Upon such a determination, the plaintiff will be entitled to a credit for the overpaid amount plus interest at the statutory rate of twelve percent from the date each tax bill was paid. The government may not apply this credit to any future property tax obligation without the tax payer's consent. Except for 1 Guttets Gade and Crown Prince Street 1, the government may, however, choose to refund this credit and interest to the plaintiff. Because the plaintiff no longer owns 1 Guttets Gade and Crown Prince Street 1, the government shall forthwith refund the overpaid amount once it is determined.

An appropriate decree follows.

## DECREE

Having considered the entire record in this matter, including the testimony and documentary evidence presented at the trial on January 23, 2003, and based on the Memorandum of even date, it is hereby,

**DECREED** that the Tax Assessor's Office has failed to assess and tax the litigated properties of plaintiff at their actual value.

The Court further enters the following remedial orders:

### A. 5B Anna's Retreat (Tax Parcel No. 1–05604–0311–00)

**ORDERED** that Parcel No. 5B Anna's Retreat shall have a value of $0.00 for its 1999 property tax assessment, and a value of $0.00 for its 2000 property tax assessment, and that these values and their corresponding tax liabilities shall remain in effect until such time as the Special Master certifies that the Territory's property tax system will produce credible and reliable actual values; and it is further

**ORDERED** that the plaintiff is entitled to a credit in the amount it overpaid its 1999 and 2000 property tax bills, plus interest at the statutory rate of twelve percent from the date each tax bill was paid. The government may not apply this credit to any future property tax obligation without the tax payer's consent. The government may, however, choose to refund this credit and interest to the plaintiff.

### B. Queens Street 14 (Tax Parcel No. 1–05302–4108–00)

**ORDERED** that Parcel No. Queen Street 14 shall have a value of $1,578,000.00 for its 1999 property tax assessment, and a value of $1,578,000.00 for its 2000 property tax assessment, and that

these values and their corresponding tax liabilities shall remain in effect until such time as the Special Master certifies that the Territory's property tax system will produce credible and reliable actual values; and it is further

**ORDERED** that the plaintiff is entitled to a credit in the amount it overpaid its 1999 and 2000 property tax bills, plus interest at the statutory rate of twelve percent from the date each tax bill was paid. The government may not apply this credit to any future property tax obligation without the tax payer's consent. The government may, however, choose to refund this credit and interest to the plaintiff.

### C.  1 Guttets Gade (Tax Parcel No. 1–05302–4310–00) and Crown Prince Street 1 (Tax Parcel No. 1–05302–4311–00)

**DECREED** that the plaintiff has overpaid its 1999 and 2000 property tax bills for 1 Guttets Gade and Crown Prince Street 1; it is further

**ORDERED** that upon receiving the Special Master's certification that the Territory's property tax system is capable of producing credible and reliable actual values, the government shall assess the value of these properties, the corresponding tax liabilities for the 1999 and 2000 property tax years, and calculate the amount of the plaintiff's overpayment. The amount of the overpayment shall be refunded forthwith to the plaintiff, plus interest at the statutory rate of twelve percent from the date each tax bill was paid.

### D.  20 Crystal Gade (Tax Parcel No. 1–05401–3610–00)

**ORDERED** that Parcel No. 20 Crystal Gade shall have a value of $167,000.00 for its 1999 property tax assessment, and a value of $167,000.00 for its 2000 property tax assessment, and that these values and their corresponding tax liabilities shall remain in effect until such time as the Special Master certifies that the Territory's property tax system will produce credible and reliable actual values; and it is further

**ORDERED** that the plaintiff is entitled to a credit in the amount it overpaid its 1999 and 2000 property tax bills, plus interest at the statutory rate of twelve percent from the date each tax bill was paid. The government may not apply this credit to any future property tax obligation without the tax payer's consent. The government may, however, choose to refund this credit and interest to the plaintiff.

### E.  Nye Gade 4 (Tax Parcel No. 1–05401–3412–00) and Bred Gade 4 (1–05401–3411–00)

**DECREED** that the plaintiff has overpaid its 1999 and 2000 property tax bills for Nye Gade 4 and Bred Gade 4; it is further

**ORDERED** that upon receiving the Special Master's certification that the Territory's property tax system is capable of producing credible and reliable actual values, the government shall assess the value of these properties, the corresponding tax liabilities for the 1999 and 2000 property tax years, and calculate the amount of the plaintiff's overpayment. The plaintiff is entitled to a credit in the amount of this overpayment, plus interest at the statutory rate of twelve percent from the date each tax bill was paid. The government may not apply this credit to any future property tax obligation without the tax payer's consent. The government may, however, choose to refund this credit to the plaintiff.

F. Norre Gade 41 (Tax Parcel No. 1–05401–4504–00) and Norre Gade 42 (Tax Parcel No. 1–05401–4503–00)

**DECREED** that the plaintiff has overpaid its 1999 and 2000 property tax bills for Norre Gade 41 and Norre Gade 42; it is further

**ORDERED** that upon receiving the Special Master's certification that the Territory's property tax system is capable of producing credible and reliable actual values, the government shall assess the value of these properties, the corresponding tax liabilities for the 1999 and 2000 property tax years, and calculate the amount of the plaintiff's overpayment. The plaintiff is entitled to a credit in the amount of this overpayment, plus interest at the statutory rate of twelve percent from the date each tax bill was paid. The government may not apply this credit to any future property tax obligation without the tax payer's consent. The government may, however, choose to refund this credit and interest to the plaintiff.

BERNE CORP. and B & B Corp., Twenty-one Queens Quarter, Inc., Miller Properties, Inc., Equivest St. Thomas, Inc., Robert Schmidt, Kim Holdsworth, Robert Schmidt Development Corp., and Dori P. Derr, The Cyril V. Francois Associates, LLC, Shell Seekers, Inc., Charles W. Consolvo, Linda

B. Consolvo, Snegle Gade Associates LP, Charles W. Consolvo as Trustee of the Yvette B. Lederberg Trust, Arthur B. Choate, Stewart Loveland, and Stacy Loveland, Elisabeth Sharp, Plaintiffs,

v.

GOVERNMENT OF THE VIRGIN ISLANDS, Roy Martin, in his official capacity as Tax Assessor, and the Board of Tax Review, Defendants.

Nos. CIV.2000–141, CIV.2000–167, CIV. 2001–151, CIV.2001–155, CIV.2001–181, CIV.2001–196, CIV.2001–197, CIV.2001–228.

District Court, Virgin Islands,
D. St. Thomas and St. John.

April 14, 2004.

